[Civ. No. 5123. First Appellate District, Division One.—June 28, 1927.]

IDA B. PHILBROOK, Individually and as Administratrix, etc., Respondent, v. MERCANTILE TRUST COMPANY OF CALIFORNIA (a Corporation), Appellant.

Brobeck, Phleger & Harrison and J. F. Shuman for Appellant.

Bert Schlesinger, Jerome H. Bayer and Ida B. Philbrook, *in pro. per.*, for Respondent.

CAMPBELL, J., *pro tem.*—This is an appeal from a judgment in favor of respondent and against appellant in the sum of $5,601.98.

On July 1, 1911, the Down Town Realty Company leased from Mary Prior and others a parcel of real property at the southwest corner of Mason and Eddy Streets in San Francisco. The lease covered a term of thirty years, commencing on April 1, 1912, and provided, among other things, for the immediate erection of a building upon the demised premises by the lessee at its own expense. In pursuance of this latter provision the Down Town Realty Company on July 25, 1911, entered into a written agreement with two construction engineers, Taylor and Johnson by name, whereby the Down Town Realty Company employed these men to superintend the erection of a building on the leased premises and agreed to compensate them for their services in a certain total amount made payable at successive stages in the construction of the contemplated building. On the day of the execution of this agreement Taylor assigned all of his interest thereunder to one Carleton A. Philbrook. This assignment was forthwith consented to and ratified by both Taylor and the Down Town Realty Company, and at all times thereafter Carleton A. Philbrook was treated by all interested parties as a party to the agreement in place of Taylor. Immediately upon the execution of the agreement Johnson and Philbrook commenced the performance of their duties thereunder and continued such performance at all times thereafter up to June 4, 1912. Between December 1, 1911, and June 4, 1912, the Down Town Realty Company failed to furnish the labor, material, and money requisite to the construction of the contemplated building. Finally, on June 4, 1912, all work was entirely stopped and prevented by virtue of the failure of the Down Town Realty Company to furnish the commodities mentioned. On August 12, 1912, Philbrook and Johnson mutually severed and dissolved all of their business relations. Throughout all of the foregoing transactions the Down Town Realty Company assured Philbrook that it would compensate him for his services.

Meanwhile, on the fifteenth day of November, 1911, the Down Town Realty Company created a bonded indebtedness

and to secure the same executed a "mortgage" or "deed of trust." Under this document the company conveyed, granted, mortgaged, and pledged to the Mercantile Trust Company, styled in the document as "Trustee," all of its right, title, and interest in and to the demised premises aforementioned, together with the building and improvements to be erected thereon during the term of the lease, and also all other property, real and personal, of every kind and nature whatsoever, and wheresoever the same may be situated, whether owned by and belonging to the company at the date of the mortgage or deed of trust or thereafter in any manner acquired by the company during the life or term of the mortgage or deed of trust. This document also provided that all moneys received as the purchase price of bonds delivered should be held by the "Trustee" subject to the lien of the mortgage or deed of trust, to be disbursed in the manner therein specified. The manner of disbursement of these moneys is set forth in article XVIII of the document, which reads as follows:

"Bonds of the issue herein mentioned shall be certified and delivered by the Trustee in accordance with the provisions of this article and not otherwise.

"The Trustee shall deliver said bonds or any part thereof to the Company or its order or to the purchasers thereof upon the payment to the Trustee of the par value thereof together with all accrued interest thereon, but all moneys so received shall be held by the Trustee subject to the lien of this mortgage, or deed of trust to be disbursed in the manner hereinafter specified. Such moneys while on deposit with the Trustee shall bear no interest.

"On the fifteenth day of each and every month there shall be paid to the Company from the proceeds of said bonds or in said bonds at their par value and accrued interest thereon, eighty (80%) per cent of the cost of the work actually done on said buildings between the date of such payment and the last payment made by the Trustee to the Company hereunder upon production of a certificate of the architect in charge of said building or buildings showing the actual cost of the work done on said buildings between the date of said certificate and the date of the last payment made to the Company by the Trustee hereunder; and such architect's certificate shall be conclusive as to the cost of the work

so done and shall be full warrant and authority to the Trustee for making such payment to the Company.

"It is further understood and agreed that the balance of the proceeds of said bonds or of said bonds remaining in the hands of the Trustee upon the completion of said building or buildings after making the payments to the Company hereinbefore provided for shall be paid to the Company thirty-five days after the completion of said building or buildings; it being understood, however, that said balance of the cost of the hotel portion of said building shall be paid thirty-five days after the completion of said portion of said buildings, and that the balance of the cost of the theatre portion of said building shall be paid thirty-five days after the completion thereof, provided, however, that the total amount of all payments in said bonds or the proceeds thereof to be made on account of the cost of the construction of the hotel portion of the building shall not exceed the sum of seventy-five thousand ($75,000) dollars, and that the total amount of all payments to be made in said bonds or the proceeds thereof on account of the cost of the theatre portion of said buildings shall not exceed one hundred and twenty-five thousand ($125,000) dollars.

"The payments above provided to be made from the proceeds of said bonds or in said bonds at their par value shall be made only upon the order of the Company and under its corporate seal by its President or Vice-President and Secretary, and shall be accompanied by a certificate of Earl B. Scott, or his successor, as Architect of said building, showing that the necessary work had been done to entitle the Company to the payment requested to be made in its order or orders. Such order and such certificate shall be full warrant and authority to the Trustee for making the payment in money or bonds as hereinbefore provided, and said certificate of said Architect shall be conclusive evidence for the Trustee of the performance of the work therein stated to be done.

"Payments herein provided shall be made from the proceeds of the sale of said bonds first to the extent that such proceeds are available and then by said bonds at their par value."

For the recovery of moneys due him under his agreement with the Down Town Realty Company and for services

rendered by him in connection with the construction of the contemplated building on the demised premises Carleton A. Philbrook filed suit against the company in the superior court of the state of California in and for the city and county of San Francisco. That suit was entitled "*C. A. Philbrook* v. *Down Town Realty Co.*" On November 14, 1912, a writ of attachment issued in that action, and on the same day the sheriff of the city and county of San Francisco duly attached and levied upon all goods, credits, effects, debts due or owing, or other personal property in the possession of or under the control of the Mercantile Trust Company belonging to the Down Town Realty Company. At the time of this attachment and levy the Mercantile Trust Company admittedly held in its hands the sum of $33,482.16, which represented moneys received as the purchase price of bonds issued by the Down Town Realty Company and which moneys it claims to have held under and pursuant to the terms of the mortgage or deed of trust. Upon the making and levy of attachment the sheriff demanded a statement, and the Mercantile Trust Company made no answer. On October 27, 1914, a judgment in favor of Carleton A. Philbrook was made and entered in the case of "*C. A. Philbrook* v. *Down Town Realty Company,*" for the sum of $33,325.55, together with interest at the rate of seven per cent per annum from the date thereof until paid, and costs in the sum of $49.25. Upon this judgment a writ of execution issued on November 7, 1914. When this writ was served upon the Mercantile Trust Company it answered that it had no funds of the Down Town Realty Company and refused to allow any moneys to be applied or paid in satisfaction of that judgment. On January 8, 1915, the sheriff of the city and county of San Francisco returned the writ of execution wholly unsatisfied.

In August, 1915, Carleton A. Philbrook died and thereafter his widow, Ida B. Philbrook, individually and as administratrix with the will annexed of his estate, filed this suit against the Mercantile Trust Company as garnishee under section 544 of the Code of Civil Procedure of the state of California, upon the theory that the sum of $33,482.16, which at the time of attachment the Mercantile Trust Company held in its possession under and pursuant to the terms of the mortgage or deed of trust, represented

property or credit owned by the Down Town Realty Company.

The lower court gave judgment for the plaintiff, finding among other things the following: "That at the time of said levy of attachment, as stated in plaintiff's complaint, upon the moneys held by said Mercantile Trust Company of San Francisco under and by virtue of said instrument of date November 15, 1911 (that being the deed of trust from Down Town Realty Company to Mercantile Trust Company of San Francisco), no architect's certificate as therein defined in said instrument was presented to the said Mercantile Trust Company of San Francisco." The court further found that "the said written instrument mutually signed and executed on the 15th day of November, 1911, by Down Town Realty Company and by Mercantile Trust Company of San Francisco, as aforesaid (being the deed of trust from Down Town Realty Company to Mercantile Trust Company of San Francisco) was made by the said parties thereto with intent to delay and defraud Carleton A. Philbrook of all his demands as a creditor of said Down Town Realty Company, and out of all his rights and claims as such creditor."

The appellant claims that there is no evidence to support a finding that on November 14, 1912 (the date the garnishment was made), it had any moneys, goods, credits, or effects due or owing to Down Town Realty Company, or that it had in its possession or control any personal property belonging to Down Town Realty Company; and it further contends that there is no testimony on which the court could base a finding that the trust agreement from Down Town Realty Company to Mercantile Trust Company of San Francisco was in fraud of creditors.

The questions then presented are: Did the Mercantile Trust Company on November 14, 1912, have any money, goods, credits or effects in its possession due or owing to the Down Town Realty Company? Was the certificate of the architect showing the actual cost of the work done a prerequisite to the money becoming due and owing for work done or services performed? and, Was the trust agreement in fraud of creditors?

There is no issue as to the work being done or the service performed—this question has been adjudicated and a judg-

ment entered to that effect—appellant's position being that as the contract provides "there shall be paid to the company from the proceeds of said bonds or in said bonds at their par value and accrued interest thereon eighty (80%) per cent of the cost of the work actually done on said building between the date of such payment and the last payment made by the Trustee to the company hereunder, upon production of a certificate of the architect in charge of said building or buildings showing the actual cost of the work done . . . and such architect's certificate shall be full warrant and authority to the Trustee for making such payment to the company," no money was due and owing until the production of the architect's certificate.

It would seem that whatever lien attached to the purchase money paid for the bonds was discharged when and to the extent that the construction of the building approached completion. The real consideration for the release of these moneys or any part thereof was the creation of an equivalent value in terms of building construction. This is made clear by the provisions of article XVIII of the mortgage or deed of trust quoted. The production of the architect's certificate required by this article does not represent the consideration for the release of these moneys to the Down Town Realty Company, but merely the required form of evidence of the work done. The purely evidentiary function of the requirement of the architect's certificate is particularly emphasized by a subsequent provision of the same article as follows: "The payments above provided to be made from the sale of said bonds or in said bonds at their par value shall be made only upon the order of the company and under its corporate seal by its President or Vice-President and Secretary, and shall be accompanied by a certificate of Earl B. Scott, or his successor, as architect of said building, showing that the necessary work has been done to entitle the company to the payment requested to be made in its order or orders. Such order and such certificate shall be *full warrant and authority* to the Trustee for making the payment in money or bonds as hereinbefore provided, and said certificate of said architect shall be *conclusive evidence for the Trustee* of the performance of the work therein stated to be done."

It is obvious from the foregoing that the production of the architect's certificate was a formal condition inserted primarily for the protection of the Mercantile Trust Company and giving to it *"full warrant and authority"* for the making of the payments. Neither the bondholders nor the Down Town Realty Company were interested in the architect's certificates. The former wanted only value in construction work equivalent to moneys released, and the latter wanted only the equivalent in money for the work done.

That Carleton A. Philbrook performed services in connection with the construction of the contemplated building and pursuant to the terms of the agreement entered into with the Down Town Realty Company is not denied. Nor is it denied that he was not paid for the services performed. These facts were adjudicated in the action of *C. A. Philbrook* v. *Down Town Realty Company*. The judgment in that case has become final. The judgment of a court of competent jurisdiction adjudicating the fact that the service had been performed by Carleton A. Philbrook having been entered, the Down Town Realty Company was entitled to receive the money due from the Mercantile Trust Company to it in payment of such service as "cost of the work actually done on said building." The production of the architect's certificates required does not represent the consideration for the release of these moneys to the Down Town Realty Company, but merely the required form of evidence of the work done, which is rendered unnecessary when the fact that the work has been performed has been adjudicated and is evidenced by the solemn judgment of a court of record.

That there existed at the time of the garnishment an action for debt by Down Town Realty Company against Mercantile Trust Company—that there was a valid obligation or debt owing to Down Town Realty Company is evident.

The question involved here was passed upon in *Brainard* v. *Rogers*, 74 Cal. App. 247 [239 Pac. 1095]. There the garnishee was a fire insurance company and the debtor an insured whose loss was covered by the policy issued. At the time of the garnishment the loss had not been adjusted nor had the proofs of loss been filed as required by the policy. The architect's certificate in the instant case served

a purely evidentiary purpose, whereas the proof of loss in the Brainard case was a condition of the insurance contract. If, therefore, the right of garnishment existed in the Brainard case *a fortiori* the right of garnishment existed here. In that case, with reference to the sections of the code relating to the liability and the procedure for citation for the garnishee, the court says: "It will be noted that throughout these sections the expressions 'belong to' and 'owing' are used in the disjunctive. But one conclusion may be drawn from this and that is that the legislature intended to authorize the attachment of moneys as well as other property belonging to the debtor which the garnishee then had in his possession. Looking at the code sections in this light it follows that moneys which are owing the debtor, though not yet due, are subject to garnishment because the term owing includes an immature as well as a mature obligation." (See, also, *Ransom* v. *Bidwell*, 89 Conn. 137 [93 Atl. 135].)

When work is done pursuant to the terms of a building contract the presentation of an architect's certificate is not a prerequisite to the inception of an obligation or debt due and owing, notwithstanding that the contract requires the production of such certificate. The rendition of the service itself gives rise to the obligation "due and owing" for the compensation of services rendered. The word "due" upon which a claim is founded as applied to a debt or obligation to pay money does not always mean that the money is then immediately payable. It may be so used, but it often merely denotes the idea of a complete debt, an existing obligation, or money fully earned but not payable until a future time or until the happening of another event (Webster's Dictionary). "This question was decided by the District Court of Appeal in *Hettinger* v. *Thiele*, 15 Cal. App. 1 [113 Pac. 121]. In that case the facts were the same as in the case at bar, except that the fifth clause, instead of declaring that certain sums were to be paid when certain parts of the work were finished, provided that seventy-five per cent of the price should be paid as the work progressed. It contained the same proviso requiring the certificate from the architect before money for work done was payable. In that respect its language was identical with the contract here sued on, as also was the twelfth clause.

It was held that the loss payable by the owner, upon a total destruction, included the amount due for the work done at that time, and that the issuance of a certificate by the architect was unnecessary to the accrual of a cause of action therefor." (*Ahlgren* v. *Walsh,* 173 Cal. 29 [Ann. Cas. 1918E, 751, 158 Pac. 752].)

Here Carleton A. Philbrook on July 25, 1911, commenced to work and render service and so continued until on June 4, 1912, when all work on the building was stopped and prevented because of the failure of the Down Town Realty Company to furnish labor, materials, and money requisite to the construction of the contemplated building, and no work was done on such building up to November 14, 1912, when the writ of attachment was issued—a period of over five months, and no certificate of the architect was presented showing the work or service performed by Philbrook which, however, the court in the action of *C. A. Philbrook* v. *Down Town Realty Company* found was performed by him. If, as claimed by appellant, no money was due from the Trustee to the Down Town Realty Company with which to pay Philbrook until the certificate of the architect was presented and such certificate was never presented, irrespective of the amount of bonds sold by the Trustee or the labor performed or services rendered, no money would ever be due to compensate Philbrook for such services. This cannot be the rule. ▮ It is not presumed that the parties intended that money rightfully belonging to the party to whom it is due or owing shall be forfeited upon the arbitrary will or caprice of the architect in withholding the certificate (*Wyman* v. *Hooker,* 2 Cal. App. 38 [83 Pac. 79]).

Philbrook entered into the agreement not with the Mercantile Trust Company, but with the Down Town Realty Company; therefore he could directly assert his rights thereunder only against the Down Town Realty Company. This he did. But the Down Town Realty Company had already transferred all of its assets to the Mercantile Trust Company with the understanding that the obligations incurred by the former in the construction of the building would be discharged by the latter under the terms of the mortgage or deed of trust. The mortgage or deed of trust was not made in behalf of the bondholders

any more than the Down Town Realty Company. The company under the terms of the mortgage or deed of trust in effect consented to the withholding of these moneys upon the understanding that they would be used to discharge the obligation which it incurred in the construction of the building. The Mercantile Trust Company had notice of the suit brought by Philbrook by means of the attachment process served upon it. It did not elect to intervene. The architect's certificate, if issued, would have meant nothing more than evidence of work done by Philbrook and the validity of his claim. That evidence was afforded in just as conclusive and effective form by the judgment of the superior court in the case of *C. A. Philbrook* v. *Down Town Realty Company*. "The court found that there was a completion of the work, and in that case there was no legal ground left upon which an architect's certificate might be refused. Where a certificate is refused without cause the contractor may not be forever debarred from collecting his money" (*Kling* v. *Buche,* 32 Cal. App. 679 [163 Pac. 871]).

Appellant, in support of its contention that there is no evidence to support the findings that on the date of the garnishment the trustee had moneys due and owing to Down Town Realty Company, has cited us to *Hassie* v. *God Is With Us Congregation,* 35 Cal. 378, *Grain* v. *Aldrich,* 38 Cal. 514 [99 Am. Dec. 423], *Redondo Beach Co.* v. *Brewer,* 101 Cal. 322 [35 Pac. 896], *Aigeltinger Co.* v. *Healy-Tibbits Construction Co.,* 23 Cal. App. 608 [139 Pac. 436], *Early* v. *Town of Redwood City,* 57 Cal. 193, *Maier* v. *Freeman,* 112 Cal. 8 [53 Am. St. Rep. 151, 44 Pac. 357], and *Gow* v. *Marshall,* 90 Cal. 565 [27 Pac. 422]. These cases, however, are distinguishable from the case at bar. In the Hassie case there is no consideration of the question whether a valid garnishment can be made of a debt due and owing though perhaps not presently payable at the time of the garnishment, the court holding "that Kincaid could not have maintained an action at law against the defendant at the time the attachment was served upon the latter, is very clear. There was no privity of contract between them. The defendant had never undertaken or promised expressly or impliedly to pay the money to Kincaid; the relation of debtor and creditor did not therefore exist between them. Kincaid was in no sense the assignee of the contract

between Davis and the defendant.'' The Grain case does not involve the subject of garnishment. It discusses merely the validity of the assignment of a part of an entire demand and in that connection mentions the Hassie case. The Redondo Beach Company case was an action in which the vendee of real property elected to declare a contract forfeited. Subsequent to the election a creditor of the vendee garnisheed the moneys which had been paid to the vendor by the vendee under the contract of sale. There the court expressed the opinion that the vendee still had some claim against the vendor for the moneys paid in spite of the default, but that such claim was subject to the vendor's right to recoup damages for the breach of the contract, and at best was a mere equity and therefore not subject to garnishment. In the Aigeltinger case the contract provided that payments should be made upon the fifteenth day of each month covering the value of seventy-five per cent of the work performed. The defendant was paid for all work done up to June 1, 1920, and defaulted on June 20, 1920. On the day following a creditor of defendant levied a garnishment on the garnishee. The court held in effect that when on June 20th the defendant abandoned his contract he waived all rights to compensation under his contract and that therefore when the garnishment was levied on June 21st there was nothing due from the garnishee to defendant; that when, however, on June 23d, subsequent to the garnishment, the defendant accepted the surrender and cancellation of the contract it became obligated to pay for the reasonable value of services performed during the month of June. This acceptance of the surrender created a new relation between the parties and, inasmuch as it occurred subsequent to the garnishment, is without effect upon it. The supreme court, in denying a transfer of the case, used this language: ''On these facts it appears that there was, at the date of the garnishment, no debt, matured or unmatured, due the plaintiff. This being so, there was clearly nothing subject to attachment. We do not express any opinion on the correctness of the broader declaration of the District Court of Appeal that there must be, at the date of the garnishment, a present right of action; in other words, that a debt which is due, but not yet payable, may not be attached.'' *Early* v. *Town of Redwood City* is a case wherein there appears

to have been an absence of obligation from the garnishee to the defendant at the time of garnishment, for no money was owing to the defendant unless and until the services required by the contract were completed, and at the time of the garnishment the work was incomplete. In the Maier case the court merely held that the garnishment of the purchase price before the sale was completed was ineffective because at that time no credit existed and there was no assurance that it ever would exist; and in the Gow case the court merely draws the distinction between a debt and credit as subjects of garnishment, the court stating: "A debt is money owing by the garnishee to the defendant which may be paid over to the sheriff, while credits are something belonging to the defendant, but in the possession and under the control of the garnishee, like promissory notes or other evidence of indebtedness of third parties, which may be delivered up or transferred to the sheriff."

There is nothing in the contract between Philbrook and Down Town Realty Company requiring him to procure the architect's certificate. This certificate is solely for the benefit of and as a protection to the trustee (*Rushing* v. *Union Pipe & Const. Co.*, 5 App. Div. 448 [39 N. Y. Supp. 217]). Philbrook was in nowise responsible for the abandonment of the work; he performed the services, and payment for such services was due and owing under the trust agreement from Mercantile Trust Company to Down Town Realty Company at the time the garnishment was made.

It is not essential to an affirmance of the judgment in view of the conclusion we have reached upon the question discussed to pass upon the remaining objection urged that there is no evidence to support the finding that the trust agreement was in fraud of creditors, and,·therefore, upon that question we express no opinion.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 25, 1927.