[L. A. No. 22187. In Bank. July 7, 1952.]

ALEXANDER R. KELLEY, Respondent, v. WILLIAM A. UPSHAW et al., Defendants; CODY W. HOWARTH, Appellant.

John M. Davenport for Appellant.

Sampson & Dryden and Jacob Swartz for Respondent.

EDMONDS, J.—Alexander R. Kelley loaned William A. and Othelia A. Upshaw $17,900. Thereafter, he entered into an agreement executed by the Upshaws and Cody W. Howarth which conditionally reduced the amount of the indebtedness and extended the time of payment. The appeal of Howarth presents for consideration questions concerning the rights of the respective parties under the extension agreement.

The complaint charged that in 1947, the Upshaws and Howarth jointly and severally became indebted to Kelley for $17,600 which they promised in writing to pay. They discharged part of their obligation, but refused upon demand to pay the balance due.

As a second cause of action, Kelley alleged that in 1947 he loaned the Upshaws $17,900. They executed and delivered to him a promissory note payable in installments of $200 per week, with interest at the rate of 6 per cent. The note provided that, in the event of default in any pay-

ment, the entire amount of principal and interest should become due.

Later, Kelley pleaded, after the note was in default, he agreed in writing to extend the time for payment and to forbear to sue. In consideration of the extension the defendants executed a contract promising to pay Kelley $8,800 by June 1, 1948. If the payment was not made, then they agreed to pay $17,600, the full amount unpaid upon the note, with interest. Kelley alleged his compliance with the agreement and the failure of the defendants to make the required payment. He acknowledged having received $4,-402.74 in reduction of the principal of the extension agreement and claimed that $13,197.26, plus interest, is due and owning to him from the Upshaws and Howarth.

In a third count of the complaint against the Upshaws only, Kelley realleged the terms of the promissory note and their failure to pay any part of it except $4,702.74.

By their joint answer, the Upshaws and Howarth denied the allegations of the first cause of action except as to the payment of $4,402.74. As to the second cause of action, they admitted having paid that amount and pleaded the execution by the parties of the extension agreement. They alleged that in October, 1948, the parties terminated and rescinded this agreement and entered into a new contract. Later, they said, Kelley, for consideration, gave John T. Goodwin a 30-day option in writing to purchase the promissory note for $2,500. Thereafter, within the option period, Kelley refused to accept payment of that sum. Except as to the payment of $4,402.74, the answer denied the allegations of the second and third causes of action.

For a separate defense, it was alleged that, in February, 1949, Kelley agreed in writing with Goodwin to cancel the amount due from the defendants upon payment within 30 days of $2,500. Before the expiration of the option period, according to the answer, Kelley told Goodwin, Howarth and the Upshaws he would not accept that amount as full payment of the debt. A further allegation was that Goodwin, the Upshaws and Howarth were then, and are now, ready and able to pay Kelley $2,500, which he refuses to accept.

The answer also asserted, as a third defense, that the promissory note sued upon is secured by a chattel mortgage which Kelley has not foreclosed. By another defense the Upshaws and Howarth charged that the promissory note was given pursuant to an agreement by which Kelley loaned

William Upshaw money at a rate in excess of 12 per cent per annum interest. According to the pleading, William Upshaw received only $15,000 as consideration for the note, Kelley retaining $2,900 as interest on the loan. The final separate defense was that the complaint does not state facts sufficient to constitute a cause of action.

By the extension agreement, William Upshaw and Howarth agreed to pay $1,200 forthwith and $50 per week, with interest, until the note was paid. The agreement stated the amount of $17,600 as being due upon the note, but provided that if $8,800 plus interest, was paid on or before June 1, 1948, that sum would be accepted in full payment of the principal. In the event of default, the contract reads, the entire balance of the note, plus interest, "shall be due and shall be paid on the weekly basis of Fifty ($50.00) Dollars per week, plus interest."

Howarth appeared as his own counsel at the trial. Undisputed evidence shows the execution of the promissory note and of the first extension agreement. There is testimony tending to prove that Kelley offered in writing to assign the chattel mortgage for $2,500. J. Clifford Argue, Goodwin's attorney, testified that he drafted the instrument, which was signed by Kelley alone. A copy of the instrument, "to the best of his knowledge," was admitted into evidence.

Argue described the document as being "in the nature of an option executed by Mr. Kelley wherein he granted to John Goodwin an option to purchase the chattel mortgage then existing against the equipment at Coast Enameling for $2500 cash. He gave him thirty-days' time in which to raise the $2500, and that was the option; that was the agreement."

The record also includes an assignment of the chattel mortgage by Kelley to Howarth in September, 1947. It recites receipt of a consideration of $8,800.

Kelley testified that, at the time he signed the alleged option, "there was no money given to me." He further said that, on a visit to Argue's law office a few hours later, his wife took the instrument away from Argue and destroyed it. The same day, Kelley told Goodwin that he had destroyed the document and did not intend to abide by its terms.

The testimony as to whether $2,500 ever was tendered to Kelley under his agreement with Goodwin is in direct conflict. Howarth said that five days after the instrument was

executed, he offered to pay Kelley the money. He further stated that Goodwin acted as his agent in the transaction. Kelley denied that Howarth or anyone else had tendered payment to him.

Following trial, and after entry of a minute order in which judgment was ordered against the defendants and Kelley's counsel directed to prepare findings, Howarth retained an attorney. Thereafter, his attorney filed objections to Kelley's proposed findings of fact and conclusions of law. In them, for the first time, Howarth took the position that he can be liable for no more than accrued installments of principal and interest under the extension agreement as of the date of judgment. There was, he claimed, no provision for acceleration of installment payments and no basis for a finding that the balance of the amount of the note, with interest, was due.

The findings of fact signed by the trial judge stated: The promissory note was in default at the time the parties signed the extension agreement providing for the payment of $8,800 by June 1, 1948. This agreement was in default. Four thousand, four hundred and two dollars and seventy-four cents had been paid on the note subsequent to the execution of the extension agreement, therefore, Howarth owed Kelley $13,197.20, plus interest, payable at the rate of $50 principal per week commencing December 1, 1947. As of June 30, 1950, there was $6,700 due from Howarth to Kelley, less $4,402.74 paid subsequent to December 1, or a total of $2,297.26, plus interest.

Other findings were: Kelley offered to give Goodwin a 30-day option "to purchase the right, title and interest, if any, of plaintiff, in those certain fixtures and assets of a business being conducted by defendants Howarth and Upshaw" for $2,500. Goodwin neither accepted the offer nor obligated himself to make any payment. Kelley rescinded the offer by taking possession of the memorandum and advising Goodwin that it was revoked. At no time did anyone on Goodwin's behalf tender Kelley $2,500. Although the note was secured by a chattel mortgage, Kelley "released and assigned" it to Howarth. The assignment and release was part of the consideration for the extension agreement and thereafter the obligation of the defendants was unsecured. The promissory note was not executed pursuant to an agreement for a loan at a rate of interest in excess of 12 per cent per annum.

As conclusions of law, the court held that Kelley was en-

titled to judgment against Howarth for $13,197.20 principal and $2,694.16 interest, payable as follows: $2,297.26 principal and $2,694.16 interest payable forthwith, the balance of $10,899.94 to be paid at the rate of $50 per week, plus interest, commencing July 1, 1950. The judgment provided "that execution shall issue as against said defendant Cody W. Howarth only in accordance herewith."

Howarth contends that the trial court erred in awarding judgment against him for the full amount of principal and interest provided in the extension agreement. He further argues that certain findings of fact are inconsistent and not supported by evidence.

If it be assumed that Kelley was entitled to judgment against him, Howarth says, the judgment should have been limited to the principal amount of the contract installments due at the time the action was filed, with interest only on that amount. The extension agreement, he argues, contains no provision for acceleration in the event of default in payment of weekly installments. Therefore, he states, Kelley may not recover for future installments which had not become an indebtedness at the time of suit.

Kelley, on the other hand, contends that, by the express terms of the contract, the entire amount of unpaid principal and interest was due and owing on June 1, 1948. He relies upon the provision of the agreement that, if $8,800 plus interest was not paid by June 1, the entire balance of the note, with interest, *"shall be due* and shall be paid on the weekly basis of Fifty ($50.00) Dollars per week, plus interest."* (Emphasis added.)

From the findings of fact, conclusions of law, and judgment, it is apparent that the trial court distinguished between accrued installments and the total amount provided in the agreement. That this interpretation is correct is clear from a reading of the agreement as a whole. The contract provided for payment of $17,600 in weekly installments of $50. Kelley agreed to accept $8,800 in full satisfaction of the indebtedness if, but only if, that amount were paid by a date certain. Otherwise, the full $17,600 "shall be due" and payable at the weekly rate. The word "due" was used in the contract in the sense of "owed," not "payable." If the lesser amount was not paid on the date set, $17,600 would be owing, but payable only in accordance with the contract. There was no provision for acceleration of the weekly payments.

■ "The word 'due' upon which a claim is founded as applied to a debt or obligation to pay money does not always mean that the money is then immediately payable. It may be so used, but it often merely denotes the idea of a complete debt, an existing obligation, or money fully earned but not payable until a future time or until the happening of another event." (*Philbrook* v. *Mercantile Trust Co.*, 84 Cal.App. 187, 196 [257 P. 882]; Black's Law Dictionary, 3d ed., p. 625, "due.")

Even if there is merit to Howarth's contention that the action was premature in part, Kelley argues, he has waived this defense by failure to urge it seasonably in the trial court by special plea. Howarth, on the other hand, contends that his defense is not dilatory. The issue raised by the pleadings, he states, was the amount of money, if any, owed by him to Kelley; determination of the issue rested in part upon the number of matured installments of the contract. In addition, he argues that he seasonably presented his contention to the trial court in the form of objections to Kelley's proposed findings of fact and conclusions of law.

Neither the pleadings nor the evidence raised the issue of the prematurity of the action as to installments not yet accrued. The amount of money due, if any, was placed in issue by general denials of the allegations of the complaint and by special defenses which did not go to the question of premature commencement of the action. Howarth tried the case upon the theory that the rights of the parties were to be determined by the option contract. Only in his objections to the proposed findings of fact and conclusions of law did he raise the question of prematurity of the action.

■ "The rule has long been settled that the defense that an action is premature is in the nature of a dilatory plea not favored in the law, and that such defense must ·be seasonably urged in the trial court or it is waived." (*Seches* v. *Bard*, 215 Cal. 79, 81 [8 P.2d 835].) ■ "A plea in abatement, without disputing the justness of plaintiff's claim, objects to the place, mode, or time of asserting it and requires *pro hac vice* that the judgment be given for the defendant, leaving it open to renew the suit in another place, or form, or at another time. It must not only point out the plaintiff's error, but must show him how it may be corrected, or, in technical language, it *must give the plaintiff a better writ*." (*Nevills* v. *Shortridge*, 146 Cal. 277,

278 [79 P. 972].) Thus, although a timely plea in abatement, properly proved, requires judgment for the defendant, it is an objection which may be waived if not seasonably urged.

■ When a defense in abatement has been waived, the court may, following trial upon the merits, enter judgment for the entire amount in controversy, even though a portion of the cause of action had not accrued at the time suit was commenced. In *Seches* v. *Bard, supra,* the dispute concerned the rights of the parties to a total fund of $78,000, of which $48,000 was represented by a series of $4,000 notes payable progressively each month. At the time the action was commenced, five of the notes, totaling $20,000, had not matured and were unpaid. No plea in abatement was entered and the action was tried on its merits without reference to any possible prematurity. A judgment disposing of the entire sum in controversy was affirmed upon appeal.

Another case involving installment payments not matured at the commencement of the action is *Loomis F. G. Assn.* v. *California F. Exch.,* 128 Cal.App. 265 [16 P.2d 1040]. The association brought an action against the exchange to recover almost $100,000 payable in installments. Three installments, aggregating some $30,000, had not matured at the date suit was brought. No plea in abatement was entered and the case was not tried upon the theory that only a portion of the debt was then due. Trial was had upon the issue of breach of contract. Judgment was entered in favor of the association for the total amount, specifying that the sum of $30,000 would become payable in installments upon designated future dates. The judgment provided: ''That defendant shall pay said sums to plaintiff as they become due, as aforesaid; that execution shall issue for each amount as each amount shall become due.''

Upon appeal, the judgment was modified to read: ''That execution shall not issue for such future instalments until after the date when such instalments shall become severally due.'' Relying upon *Seches* v. *Bard, supra,* the court said: ''So far as the record speaks, the conclusion is inescapable that the case was tried upon the theory that if the Association was entitled to any of the refunds, it was entitled to all. It is too late now to take a different position.'' (P. 283.) The modification of the judgment was required for the protection of the right of the judgment debtor to be saved from execution until the amounts payable became overdue. It

in no way challenged the validity of the judgment for amounts not then matured and, in fact, emphasized the power of the trial court to grant such judgment, subject to proper safeguards upon the issuance of execution.

Howarth claims, however, that his objections to the proposed findings of fact and conclusions of law constituted seasonable presentation of the defense of prematurity. He apparently bases his argument upon a quotation in the Seches case from *Hentsch* v. *Porter,* 10 Cal. 555, 561, that: "Where the objection, if true, would only defeat the present right to recover, the defendant, though not compelled to demur or answer, should be obliged to make the objection, by motion or otherwise, before the Court of original jurisdiction, during the term at which the judgment was obtained."

Similarly broad language appears in *Williams* v. *Schalk Chemical Co.,* 11 Cal.App.2d 396, 399 [53 P.2d 1015]. There the appellant was held to be precluded from raising the question of prematurity of the action "for the reason that there was no demurrer, no special defense, no motion to vacate any part of the judgment, nor any motion for a new trial specifically on that ground. In short, the question was not presented to the trial court in any manner, and it cannot be raised, in the absence of some such presentation as suggested, for the first time on appeal." In *Loomis F. G. Assn.* v. *California F. Exch., supra,* p. 283, the court also implied that the defense might be raised in some way other than by plea.

However, a more accurate statement of the rule appears to be "that the plea that an action has been prematurely brought is in the nature of a dilatory plea which must be specially pleaded in order to be available as a defense." (*Verbeck* v. *Clymer,* 202 Cal. 557, 562 [261 P. 1017]; *Realty & Rebuilding Co.* v. *Rea,* 184 Cal. 565, 573 [194 P. 1024]; *Mears* v. *Jeffry,* 80 Cal.App.2d 610, 615 [182 P.2d 294].) In *Bemmerly* v. *Woodward,* 124 Cal. 568 [57 P. 561], the opinion assumes that an objection based upon prematurity of the action was made in the statement on motion for a new trial. At that time, the bringing of a new suit would have been barred by a statute of limitations. No cause of action existed at the time the suit was commenced. The court held that the defense had not been seasonably urged and was waived. It said that "this is a mere matter of abatement, which is waived unless pleaded. Formerly, such pleas could only be interposed before a plea to the merit. Under

our code all defenses may be included in one answer, but if a defense which is mere matter of abatement is not made by that time, it should be deemed waived.

". . . It is simply matter of abatement—a defense which is not favored, and must be made by plea, and in proper time, or it is waived. If so waived the court will be rarely justified in permitting the defense to be made later." (Pp. 574-575.)

Likewise, in *Bollinger* v. *National Fire Ins. Co.*, 25 Cal.2d 399, 405-406 [154 P.2d 399], the court held that the defense of prematurity was not asserted promptly when raised for the first time by a motion for nonsuit. Howarth attempts to distinguish the Bollinger case upon the ground that the statute of limitations had barred a new suit in that action, whereas the statute has not run against any installment here involved. The facts in the Bollinger and Bemmerly cases merely emphasize the reason for the rule, but do not alter the requirement that the defense be asserted promptly and plainly by plea. Assuming that the trial court, under the facts of this case, could have permitted the defense to be raised after waiver, it did not do so. If it is a matter of judicial discretion, as the Bemmerly case indicates, here there is no showing of an abuse of such discretion.

For these reasons, it is now too late for Howarth to complain either of the award of installments and interest accrued at the date of judgment or of the determination of Kelley's right to unmatured installments. The provision of the judgment "that execution shall issue as against said defendant Cody W. Howarth only in accordance herewith" is adequate to protect Howarth's rights insofar as execution upon future installments is concerned. Unlike the judgment which was modified in the Loomis case, *supra,* p. 283, the provision for execution here may be read as permitting issuance of execution only after the date when the installments shall become severally due.

Howarth further contends that the evidence is insufficient to sustain the findings that the promissory note was executed and delivered for good and sufficient consideration and that it was not executed pursuant to an agreement to lend money at a rate of interest in excess of 12 per cent per annum. Even if we assume that Howarth may complain of these findings, though not a party to the note, his contention is without merit. The evidence is susceptible of the construction that William Upshaw, or his company, received

adequate consideration for the note, either upon its execution or prior thereto. William Upshaw testified that Kelley loaned money to the business. He said that "the money that went into the Coast Enameling was around $15,000. The other was prior to the $15,000 loan." According to the witness, Kelley had invested in excess of $15,000. ■ "Where different conclusions may reasonably be drawn from the evidence by different minds the trial court's findings are not to be disturbed on appeal." (*Pfingsten* v. *Westenhaver, ante,* pp. 12, 19 [244 P.2d 395]; *Connor* v. *Owen,* 28 Cal.App.2d 591, 592-593 [82 P.2d 1114].)

■ The findings in regard to the total sum paid on the note, Howarth claims, are not supported by the evidence. For this argument, he relies upon testimony by Kelley that the total payments from the inception of the note, both before and after the extension agreement, were $4,700, including $1,200 paid at the time the agreement was executed. Because of this testimony, Howarth says, he must be credited with the total payment of $4,700 in computing the amount which he owes. However, the amount and time of the payments were not in issue. By his answer, Howarth admitted the payment of $4,402.74 upon the extension agreement. Incorporated in his answer and admitted into evidence, was a copy of the agreement, which showed upon its face that the original debt had been reduced by $300 by the time the agreement was made. The findings, therefore, are based upon the pleadings and the evidence.

Howarth's contention that the finding concerning the amount of his indebtedness is not supported by the evidence is based upon his claim that the action was premature in part. For the reasons which have been stated, he cannot now assert this defense.

■ Howarth further objects to the finding that Kelley did not grant Goodwin a 30-day option to purchase the promissory note, but offered to give him such an option "to purchase the right, title and interest, if any, of plaintiff, in those certain fixtures and assets of" Coast Enameling, and that no tender was made of the option price. Although the finding is inartificially drawn, it is not prejudicially erroneous. Kelley's testimony that there was no consideration for the offer, and that he withdrew it before acceptance, was undisputed. The trial court's finding says no more than that Kelley's "offer" was revoked prior to acceptance. The evidence is clearly sufficient to sustain the finding.

"An agreement for an option not based upon consideration is simply a continuing offer which may be revoked at any time." (*Thomas* v. *Birch,* 178 Cal. 483, 489 [173 P. 1102].) Although the evidence is conflicting upon the question of whether tender of the $2,500 was ever made, Howarth's own testimony was to the effect that he did not make tender until after revocation of the offer. In any event, the evidence is sufficient to sustain the finding that no tender was ever made.

Howarth contends that the finding that Kelley offered Goodwin an option to purchase the chattel mortgage is inconsistent with the finding that the mortgage had been previously assigned and released. He further argues that the evidence does not support the finding that Kelley offered Goodwin an option to purchase his "right, title and interest, . . . in those certain fixtures and assets of a business." Nor does the evidence support the finding that the assignment and release of the mortgage was part of the consideration for the extension agreement, Howarth says. If Kelley did not assign the mortgage, Howarth argues, it remains as security for the indebtedness and should have been foreclosed. If he did assign it, the $8,800 consideration recited should be credited upon the entire indebtedness.

The finding that Kelley offered Goodwin an option to purchase his "right, title and interest" in the fixtures is supported by the evidence. Although the phraseology of the finding is inept, it is clear from the record that Kelley's only interest in the fixtures at any time was the chattel mortgage. Any error in the terminology is not prejudicial to Howarth. The finding properly may be interpreted as meaning that Kelley offered Goodwin an option to purchase the chattel mortgage.

The evidence also is sufficient to support the finding that the assignment was part of the consideration for the extension agreement. Kelley testified that negotiations were conducted with Howarth prior to execution of the extension agreement. He then identified the assignment, which was admitted into evidence. From this evidence, the trier of fact could conclude that the assignment formed a part of the consideration for the agreement.

Even if Kelley did not assign the mortgage, there is no merit to Howarth's argument that it should have been foreclosed. The mortgage was not security for Howarth's promise, but only for the promissory note, to which he was

not a party. This Howarth admitted by his pleadings. ■■ " 'The mortgage only affects the remedy against the mortgagor' or primary debtor. . . . It never has been, nor has it ever been declared to be the law in this state, that a mortgagee may not take security other and in addition to his mortgage security, and if the contract with the giver of such security permits, may not enforce his debt from this third party without reference to the mortgagor and his security.'' (*Martin* v. *Becker,* 169 Cal. 301, 306-307 [146 P. 665, Ann.Cas. 1916D 171]; cf. *Loeb* v. *Christie,* 6 Cal.2d 416, 418 [57 P.2d 1303]; *Security-First Nat. Bank* v. *Cooper,* 62 Cal. App.2d 653, 666 [145 P.2d 722].)

■ In any event, Kelley's purported assignment of the mortgage without an assignment of the debt which is secured was a legal nullity. (*Johnson* v. *Razy,* 181 Cal. 342, 344 [184 P. 657]; *Adler* v. *Sargent,* 109 Cal. 42, 48-49 [41 P.2d 799]; *Hyde* v. *Mangan,* 88 Cal. 319, 327 [26 P. 180].) In like manner, the option to purchase the mortgage, if it had been accepted, would have been of no legal effect. The rights of the parties, therefore, can be determined only upon the basis of the extension agreement.

Insofar as the consideration recited in the assignment is concerned, the uncontradicted testimony is to the effect that the total amount paid upon the indebtedness was $4,702.74. From this, the trier of fact was entitled to believe that the recited consideration of $8,800 was not paid, or was merely a reference to the identical settlement figure in the extension agreement. Therefore, there is no merit to Howarth's contention that an additional $8,800 should be credited upon the indebtedness.

Howarth's last contention, that the judgment is not supported by the evidence, is a reiteration of his preceding arguments and does not require discussion.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.