[Civ. No. 15320.   First Dist., Div. Two.   May 15, 1953.]

FIREMAN'S FUND INDEMNITY COMPANY (a Corporation), Appellant, v. ELLSWORTH KNORR, as Administrator, etc., Respondent.

Lange & Rockwell, C. Dan Lange and Clyde R. Rockwell for Appellant.

Archie G. Cope, E. O. Leake and J. J. Leake for Respondent.

GOODELL, J.—This appeal is from a judgment for defendant. A motion for new trial was denied.

On December 13, 1948, one of the restaurants of Mannings Incorporated, in San Francisco, was entered by three armed robbers who took $3,737.35 from the safe. Mannings had a policy of insurance written by plaintiff covering losses by burglary, robbery and theft, and upon due proof of loss plaintiff paid the $3,737.35 loss pursuant to the policy.

One of the trio was identified as Floyd W. Knorr, who among other aliases was known as Fred Lennon. A nationwide search was launched and in early April, 1950, almost 16 months after the holdup, Knorr was recognized in Bakersfield by an agent of the Federal Bureau of Investigation who, with a state highway patrol officer, pursued him onto the Mojave Desert where he was shot to death in resisting arrest. On his person approximately $9,100 in currency was found, practically all of it in $100 bills.

On April 29, 1950, plaintiff filed this action based on its subrogation rights arising from the payment of the loss.

The original complaint joined as defendants the coroner of Kern County, an F.B.I. special agent, and several fictitious defendants, since the identity of the legal custodian of the $9,100 was not then known to the plaintiff.

On April 25, 1950, letters of administration on Floyd W. Knorr's estate were issued by the Superior Court in Kern County to respondent Ellsworth Knorr, who appeared in the action in the place of a Doe defendant. Plaintiff dismissed as to the coroner and the F.B.I. special agent and the case narrowed down to a contest between the indemnity company and the estate of Knorr.

The original complaint was filed less than a month after Knorr's death, for the purpose, obviously, of promptly asserting a claim against the $9,100 fund. As a matter of fact,

letters of administration on Knorr's estate had been granted four days before suit was filed but plaintiff apparently knew nothing about it at the time.

The complaint alleged: "That on or about the 13th day of December, 1948, Fred Lennon, by armed robbery stole moneys belonging to said Mannings, Incorporated, . . . from said premises at 761 Market Street, San Francisco, California, in the sum of $3,737.35." On information and belief it alleged that the sum of $3,737.35 found on Knorr's person "was and now is the lawful property of plaintiff as assignee and subrogee of said Mannings, Incorporated, . . ." In a second count it alleged: "That on or about the 5th day of April, 1950, defendants and each of them became indebted to the plaintiff in the sum of $3,737.35, money had and received by them, lawful property of the plaintiff . . ." and "That no part of said sum of $3,737.35 has been paid though demanded." It did not allege the presentation of a creditors' claim against the estate. Defendant's general and special demurrer was overruled and an answer was filed.

On September 7th plaintiff presented a creditors' claim for the $3,737.35, which was rejected on October 7th. On October 31st, 1950, plaintiff filed an amended complaint, repeating its original allegations but alleging also the presentation and rejection of the claim. On November 13th respondent answered this amended complaint, and these two pleadings formed the issues to be tried as they appeared when the parties stipulated (on May 17, 1951) to try the case a week later without a jury.

At the opening of the trial on May 24, 1951, respondent was granted leave to file an amended answer which *for the first time* contained a plea in abatement based on the fact that the action had been filed before any creditors' claim had been presented, and asserted that the original complaint stated no cause of action and that the action had been prematurely commenced.

Plaintiff resisted the filing of this amended answer on the ground that such dilatory plea had been waived. Defendant then countered by moving to strike out that part of the amended complaint which pleaded the presentation and rejection of the creditors' claim. The court reserved its rulings and proceeded with the trial. At its conclusion the court ruled that the amended answer should stand, but granted the defendant's motion to strike. The net result of these rulings was that the plea in abatement was upheld, while the plaintiff

was left without any pleading or proof that it had made timely presentation of its claim. This was fatal to the plaintiff's case as far as the count for money had and received was concerned, since the presentation of a claim was a *sine qua non* to a recovery on that count.

The court did not find, and could not have found, that plaintiff had not presented *any* claim, but did find: ''That plaintiff did not file or present any claim against the Estate of Floyd W. Knorr for the said sum of $3,737.35 or any other sum *prior to commencement of this action.*'' (Emphasis added.)

The court's written opinion indicates that its ruling that the plea in abatement had not been waived, was based on several early cases which held that as long as the objection of prematurity was *in some manner* brought to the trial court's and plaintiff's attention it was timely and sufficient. For instance, in *Hentsch* v. *Porter,* 10 Cal. 555, 561, one of the cases, it was said: ''Where the objection, if true, would only defeat the present right to recover, the defendant, though not compelled to demur or answer, should be obliged to make the objection, by motion or otherwise, before the Court of original jurisdiction, during the term at which the judgment was obtained.'' The court held herein that the objection that the action was premature because filed before the claim had been presented, was effectively presented at the outset by defendant's general demurrer to the original complaint even though the demurrer did not emphasize such failure by specification (*Burke* v. *Maguire,* 154 Cal. 456 [98 P. 21]).

■ However, in the recent case of *Kelley* v. *Upshaw,* 39 Cal.2d 179 [246 P.2d 23], decided on July 7, 1952, *after the decision herein,* the Supreme Court has definitively restated the rule ''that the plea that an action has been prematurely brought . . . must be specially pleaded in order to be available as a defense.'' ■ That decision is not cited in any of the briefs herein, but was called to our attention on oral argument. At page 186 the court says:

'' 'The rule has long been settled that the defense that an action is premature is in the nature of a dilatory plea not favored in the law, and that such defense must be seasonably urged in the trial court or it is waived.' (*Seches* v. *Bard,* 215 Cal. 79, 81 [8 P.2d 835].) 'A plea in abatement, without disputing the justness of plaintiff's claim, objects to the place, mode, or time of asserting it and requires *pro hac vice* that the judgment be given for the defendant, leaving it open

to renew the suit in another place, or form, or at another time. It must not only point out the plaintiff's error, but must show him how it may be corrected, or, in technical language, it *must give the plaintiff a better writ.'* (*Nevills* v. *Shortridge,* 146 Cal. 277, 278 [79 P. 972].) Thus, although a timely plea in abatement, properly proved, requires judgment for the defendant, it is an objection which may be waived if not seasonably urged.''

The court then discusses several cases where the courts have used broad language which could be taken to mean that as long as the prematurity of the action is *in some manner* called to the attention of the trial court and the plaintiff it is sufficient, citing, among others, *Hentsch* v. *Porter, supra,* and *Williams* v. *Schalk Chemical Co.,* 11 Cal.App.2d 396, 399 [53 P.2d 1015] where ''similarly broad language,'' to that found in the Hentsch case, was used. The court then says:

''However, a more accurate statement of the rule appears to be 'that the plea that an action has been prematurely brought is in the nature of a dilatory plea which must be specially pleaded in order to be available as a defense.' (*Verbeck* v. *Clymer,* 202 Cal. 557, 562 [261 P. 1017]; *Realty & Rebuilding Co.* v. *Rea,* 184 Cal. 565, 573 [194 P. 1024]; *Mears* v. *Jeffry,* 80 Cal.App.2d 610, 615 [182 P.2d 294].) In *Bemmerly* v. *Woodward,* 124 Cal. 568 [57 P. 561], the opinion assumes that an objection based upon prematurity of the action was made in the statement on motion for a new trial. At that time, the bringing of a new suit would have been barred by a statute of limitations. No cause of action existed at the time the suit was commenced. The court held that the defense had not been seasonably urged and was waived. It said that 'this is a mere matter of abatement, which is waived unless pleaded. Formerly, such pleas could only be interposed before a plea to the merit. Under our code all defenses may be included in one answer, but if a defense which is mere matter of abatement is not made by that time, it should be deemed waived. . . . It is simply matter of abatement—a defense which is not favored, and must be made by plea, and in proper time, or it is waived. If so waived the court will be rarely justified in permitting the defense to be made later.' (Pp. 574-575.) Likewise, in *Bollinger* v. *National Fire Ins. Co.,* 25 Cal.2d 399, 405-406 [154 P.2d 399], the court held that the defense of prematurity was not asserted promptly when raised for the first time by a

motion for nonsuit. . . . The facts in the Bollinger and Bemmerly cases merely emphasize the reason for the rule, but do not alter *the requirement that the defense be asserted promptly and plainly by plea.*" (Emphasis added.)

▮ It may be conceded that here the defense was eventually asserted "plainly by plea," but by no means can it be held that it was asserted "promptly." The allowance of the plea at the eleventh hour, at the opening of the trial, made this a dilatory plea not only in the technical sense used in the lawbooks but chronologically as well. The defense delayed asserting it until 13 months after the action was commenced and 6 months after issue was joined.

The original complaint could not have pleaded the presentation of a claim since at that time (as in the Bemmerly case) none had been presented.

The answer to that complaint, filed on July 13, 1950, contained no plea that the action had been prematurely commenced. *This was defendant's first opportunity to enter its plea in abatement.*

The first amended complaint, filed on October 31st, just 24 days after the rejection of the claim, alleged the presentation and rejection. Defendant could then have moved to strike this part of the amended complaint (as he did six months later, at the opening of the trial) but did not do so. On November 13th defendant answered, admitting the presentation of the claim on September 7th and its rejection on October 7th, but saying nothing whatever with respect to the prematurity of the action. *This was defendant's second opportunity to enter its plea in abatement.* Had it made such plea even then, plaintiff could have commenced a new action, since, under section 714, Probate Code, it had three months (or until January 7, 1951) to sue after the rejection on October 7, 1950.

In *Kelley* v. *Upshaw,* 39 Cal.2d 179, at page 189 [246 P.2d 23], the court suggests rather tentatively the possibility of a court exercising its discretion in permitting a defendant to avail himself of a plea in abatement after having waived it, but in the instant case it could hardly be urged that the court, in the exercise of a proper discretion, could have permitted this last-minute plea after a waiver, in the face of the chronology just set forth showing two distinct opportunities passed by. Indeed there is no contention on this appeal that the court's decision was made in the exercise of its discretion. The trial court's opinion shows that the court

was constrained to follow the line of authority (*Kelley* v. *Upshaw, supra*) which held that the prematurity point could be raised otherwise than "plainly by plea," when it held that the point had been effectively brought to the attention of court and counsel by the demurrer to the original complaint, the court having relied on *Ellissen* v. *Halleck*, 6 Cal. 386, *Hentsch* v. *Porter*, 10 Cal. 555 and *Burke* v. *Maguire*, 154 Cal. 456 [98 P. 21]. This is borne out by the following statement in respondent's brief: "Furthermore, it was wholly unnecessary for the preservation of the point to file the amended answer. At the first opportunity, defendant presented the point by general demurrer, and it is unnecessary, as above pointed out, to re-present the same point. Plaintiff was thereupon placed upon notice of defendant's position, and the erroneous ruling of the Court in overruling our demurrer did not protect or excuse plaintiff."

There can be no doubt that *Kelley* v. *Upshaw*, 39 Cal.2d 179 [246 P.2d 23], decided since the judgment herein, definitely disapproves the rule on which the trial court relied.

What has been said herein relates only to the count for money had and received. Respondent concedes, of course, that under the other count based on the trust theory "the allegation as to the filing and rejection of a claim was unnecessary." However, as already indicated, the striking out of that part of plaintiff's amended complaint which pleaded the presentation and rejection of its creditors' claim, ended the case as far as the count for money had and received was concerned. As to that count plaintiff of course did not have to prove that the $9,100 fund contained the stolen $3,737.35, but merely that plaintiff had a valid claim, as any other creditor of a decedent might have, against the assets of Knorr's estate. The prejudicial error in removing that cause of action from the case is self-evident.

The judgment is reversed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied June 13, 1953, and respondent's petition for a hearing by the Supreme Court was denied July 9, 1953.