**In re LEISURE TIME SPORTS, INC., a California corporation, Debtor.**

**Gerald L. WOLFE, M.D.; Gerald L. Wolfe, D.O., A.P.C., Defined Benefit Pension Plan and Trust, Appellants,**

v.

**LEISURE TIME SPORTS, INC.; and Francine N. Meyer, Trustee, Appellees.**

BAP No. SC–95–1732–AsJO.
Bankruptcy No. 92–13331–H11.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted January 19, 1996.

Decided March 29, 1996.

Matthew V. Herron, Robert M. Steele, San Diego, CA, for Appellants.

Michael E. Busch, Gary B. Rudolph, San Diego, CA, for Appellees.

Before ASHLAND, JONES and OLLASON, Bankruptcy Judges.

### OPINION

ASHLAND, Judge:

Dr. Gerald Wolfe appeals an order of the bankruptcy court sustaining an objection to his claim and allowing a general prepetition unsecured claim against the estate for $470,-000. We reverse and remand.

## STATEMENT OF THE FACTS

The salient facts of this case are not in dispute. The debtor Leisure Time Sports, Inc. and Dr. Gerald Wolfe entered into a memorandum of understanding in May 1991, wherein Dr. Wolfe was to purchase 5,000 shares of preferred stock of LTS Holdings, Inc., the parent corporation of Leisure Time, for $500,000. The funds for the purchase were to be obtained by a bank acceptable to both parties and Leisure Time agreed to reimburse Dr. Wolfe for the interest paid under the loan and make monthly payments to Dr. Wolfe of $2,083.33 while the loan was outstanding. The memorandum provided that after a year Dr. Wolfe had the option of retaining the shares or selling the shares back to the company. The memorandum recited that Dr. Wolfe would receive a UCC filing on "50 Lanes and Pinspotters," which described collateral in a bowling alley located in El Cajon, California (herein referred to as "the Valley Bowl collateral").

Dr. Wolfe obtained the loan for $500,000 from First International Bank. The proceeds of the loan were paid for the benefit of Leisure Time. Although the memorandum of understanding contemplated the sale of 5,000 shares of preferred stock in LTS Holdings, no such sale or transfer of stock occurred. Instead, Leisure Time carried the transaction on its books and records as a loan. Leisure Time made monthly payments to Dr. Wolfe on the loan of $2,083.33 and paid the interest on the loan directly to First International Bank. Additionally, in August 1992, Leisure Time made a $30,000 principal reduction payment to the bank for the benefit of Dr. Wolfe.

On May 18, 1992, Leisure Time filed a UCC–1 financing statement with the California Secretary of State in favor of Dr. Wolfe describing the Valley Bowl collateral. Dr. Wolfe claimed that this financing statement was filed to perfect his security interest in the Valley Bowl collateral in connection with the loan he had made to Leisure Time. Leisure Time, however, contended that the financing statement reflected a subsequent transaction wherein Dr. Wolfe agreed to loan an additional $375,000 to Leisure Time, and a colleague of Dr. Wolfe, Dr. Harrison Fort-ney, agreed to loan $150,000 to the debtor for the purchase of a game center. In fact, Dr. Fortney did make a loan to Leisure Time of $150,000 for the purchase of the game center and became the co-holder, with Dr. Wolfe, of the security interest in the Valley Bowl collateral.

In August 1992, Dr. Wolfe's pension plan, the Gerald L. Wolfe, D.O., A.P.C. Defined Benefit Pension Plan and Trust, loaned an additional $125,000 to Leisure Time. At that time, Dr. Wolfe executed and delivered to the pension plan an assignment of, among other things, all his right, title, and interest in the UCC–1 financing statement filed on May 18, 1992.

Leisure Time filed a petition under Chapter 11 of Title 11 of the United States Code on November 2, 1992. Francine N. Meyer was appointed trustee with limited powers in the Chapter 11 case. Dr. Wolfe filed a proof of claim against the estate for a secured debt in the amount of $470,000. The trustee and Leisure Time objected to the claim.

After considerable argument surrounding the objection to claim, the parties mutually agreed to mediation of the dispute by a court appointed mediator and further agreed that the mediator would present a report of recommended findings to the bankruptcy court for its consideration. The mediator conducted evidentiary hearings on October 20, October 21, October 28, December 4, and December 5, 1994. The hearings resulted in a report recommending the mediator's findings to the bankruptcy court. The mediator found that the recitation in the memorandum of understanding concerning the UCC filing on "50 Lanes and Pinspotters" constituted a grant of a valid security interest pursuant to California Commercial Code § 9203 in the Valley Bowl collateral. However, the mediator further found that Dr. Wolfe assigned the security interest in the Valley Bowl collateral to his pension plan. The report concluded, "[s]ince Dr. Wolfe voluntarily assigned his rights under the UCC–1 to the Pension Plan, the claim held by Dr. Wolfe against Leisure Time is unsecured."

Subsequent to the initial report and recommendation, the bankruptcy court requested clarification from the mediator on certain

issues. At that time, the mediator commented on the claim held by the pension plan. The pension plan had apparently also filed a secured claim against Leisure Time based upon the assignment by Dr. Wolfe of the Valley Bowl collateral. The mediator filed a supplemental report, recommending that the pension plan held no claim whatsoever against the estate.

The bankruptcy court adopted the original and supplemental recommendations and sustained Leisure Time's objection to Dr. Wolfe's claim. A motion for reconsideration of the order was brought by Dr. Wolfe, but was denied. Dr. Wolfe timely filed a notice of appeal.

### ISSUE ON APPEAL

Whether the bankruptcy court erred in holding that Dr. Wolfe's assignment of his security interest in the Valley Bowl collateral to the pension plan, without assigning the underlying debt, was a valid assignment.

### STANDARD OF REVIEW

■ The question of whether one can assign a security interest without assignment of the underlying debt is a question of law. A bankruptcy court's conclusions of law are reviewed de novo. *Ragsdale v. Haller,* 780 F.2d 794, 795 (9th Cir.1986).

### DISCUSSION

Although the facts of this case are complex, the legal issue at the crux of the matter is straight forward. We must consider whether one can assign a security interest without assigning the underlying debt and if not, we must consider the consequence of an invalid assignment.

■ A security interest cannot exist, much less be transferred, independent from the obligation which it secures. *In re DiSanto & Moore Associates, Inc.,* 41 B.R. 935, 938 (C.D.Cal.1984); *Union Supply Co. v. Morris,* 220 Cal. 331, 338–39, 30 P.2d 394, 397 (1934). The security interest follows the debt. *See Carpenter v. Longan,* 83 U.S. (16 Wall) 271, 275, 21 L.Ed. 313 (1872). If the debt is not transferred, neither is the security interest.

It follows from the principle that the lien is an incident of the debt and passes with it by operation of law, that an express assignment of the security interest is not required. It passes with the debt which it secures, and an assignment which is sufficient to transfer the debt must carry with it the mortgage or other lien.

*Union,* 220 Cal. at 339, 30 P.2d at 397 (citations omitted).

As such, there can be no assignment of a security interest independent of the assignment of the obligation. *Kelley v. Upshaw,* 39 Cal.2d 179, 192, 246 P.2d 23, 30 (1952) (a purported assignment of a mortgage without an assignment of the debt which it secured was a legal nullity).

This is not a mere technical legal requirement: To allow the assignee of a security interest to enforce the security agreement would expose the obligor to a double liability, since a holder in due course of the promissory note clearly is entitled to recover from the obligor. Furthermore, the definition of 'security interest' in Section 1–201(37), Uniform Commercial Code—an interest in personal property which secures payment of an obligation—indicates that a security interest cannot exist without a debt.

*In re Belize Airways, Ltd.,* 7 B.R. 604, 607 (Bankr.S.D.Fla.1980) (citations omitted).

The trustee and Leisure Time argue that *Belize* held that both the assignee and the assignor in that case were rendered unsecured as the result of the failed assignment. We do not read *Belize* to contain such a ruling. In that case, the assignor was held to be unsecured because he released the collateral subject to his security interest prior to entering into the assignment. The only consequence of the ineffective assignment cited by the *Belize* court was that no rights were created in the assignee. *Belize,* 7 B.R. at 607; see also, *DiSanto,* 41 B.R. at 938 (proposed assignee held no valid security interest as the result of an ineffective assignment).

■ The findings adopted by the bankruptcy court include that Dr. Wolfe held a valid security interest in the Valley Bowl collateral. He attempted to assign his inter-

est in the collateral to his pension plan. Dr. Wolfe, however, did not assign the underlying debt to his pension plan. As set forth above, such an assignment is not valid. Dr. Wolfe's attempt to assign his security interest in the Valley Bowl collateral to his pension plan was a "legal nullity." See, *Kelley v. Upshaw,* 39 Cal.2d at 192, 246 P.2d at 30; see also, *In re BNT Terminals, Inc.,* 125 B.R. 963, 970 (Bankr.N.D.Ill.1990); *In re Hurricane Resort Co.,* 30 B.R. 258, 261 (Bankr.S.D.Fla.1983) (assignment rendered void); *In re AMSCO Inc.,* 26 B.R. 358, 361 (Bankr.D.Conn.1982) (an attempted assignment would have been "of no effect"). As such, Dr. Wolfe maintains his security interest in the Valley Bowl collateral.

The trustee and Leisure Time argue that the defective perfection of a security interest in personal property renders the creditor unsecured. The issue of whether perfection of the security interest was proper was not decided by the bankruptcy court. The court adopted findings stating that Dr. Wolfe had a valid security interest and that the UCC–1 financing statement was properly filed. The court did not answer the question of whether the properly filed UCC–1 related to the May 1991 loan from Dr. Wolfe. Nonetheless, the court concluded as a basis for sustaining the objection to claim that the security interest was assigned by Dr. Wolfe to his pension plan, leaving Dr. Wolfe's claim unsecured. As discussed above, that conclusion was in error.

### CONCLUSION

As a matter of law, Dr. Wolfe could not have assigned his security interest in the Valley Bowl collateral to the pension plan without assigning the underlying debt. The bankruptcy court, therefore, erred when it used the assignment as a basis for sustaining Leisure Time's objection to Dr. Wolfe's claim. Consequently, we reverse and remand to the bankruptcy court to determine, among other things, whether the security interest was properly perfected and, if so, the value of the collateral securing Dr. Wolfe's debt.