PATRICIA PRATT, Plaintiff and Appellant, *v.* ALBRECHT CURT REUTER ET AL., Defendants and Appellees.

No. 11453. Argued November 9, 1955.—Decided May 31, 1957.

908

*Córdova & González* for appellant. *Oscar Souffront, Víctor Gutiérrez Franqui, Luis F. Sánchez Vilella, Celestino Morales, Jr.,* and *Elí B. Arroyo* for appellees.

PER CURIAM.

The appellant, Patricia Pratt, married Jorge Landrón in the State of Florida on May 15, 1946. A daughter, Patricia Gloria Landrón, was born of this marriage on May 22, 1949.

On January 29, 1951, the Circuit Court for the County of Dade entered a divorce decree in favor of plaintiff therein, Jorge Landrón, on the ground of extreme cruelty. This judgment included, among others, the following pronouncements: (a) it granted the exclusive custody of the minor Patricia Gloria, 20 months old at the time, to her mother, appellant herein; (b) it prohibited the parents from removing the minor child from Dade County, State of Florida; and (c) the court retained jurisdiction for the entry of any other orders that might be necessary concerning the future support and maintenance of the defendant mother, and the future welfare, custody, control, and maintenance of the minor, Patricia Gloria Landrón.

When this decree was entered, the defendant was living with her sister, Ann Dowling, and with her daughter, Patricia Gloria, in Miami Springs, Florida. On August 1, 1951, the minor was taken to the house of her maternal grandparents in Denver, Colorado, without authorization of the Circuit Court of Dade County, in violation of the aforesaid divorce decree. Two days later the defendant, Patricia, also moved her residence to the house of her parents in Denver.

Subsequently, and on motion of Jorge Landrón, the Circuit Court of Dade County proceeded to amend the original divorce decree by virtue of a second decree dated January 29, 1952, this time granting the custody of the minor Patricia Gloria to her father, Mr. Landrón. Under this second decree Patricia Pratt, the mother, was ordered to surrender the minor to her father; it left in effect the provision forbidding the removal of the minor from Dade County, and it retained jurisdiction to take those measures which might be necessary in the future as to the welfare, custody, etc., of the child.

On February 17, 1952, the appellant, Patricia Pratt, married her present husband, Elmer Pratt. From that date she established her residence with the latter in Salt Lake City, Utah, having taken the minor, Patricia Gloria Lan-

drón, to live with them. On September of that same year all three were visiting in Denver, Colorado. While Patricia and her daughter were driving downtown in the city of Denver, Jorge Landrón, assisted by other persons, snatched the child from her mother, by violent means, and took her to Florida and from there to this Island, where she arrived on September 27, 1952. Since then, the child has been living with her great-aunt, Mrs. Gloria Domenech, in the city of Mayagüez.

About a year later, that is, on September 23, 1953, Patricia Pratt filed the present habeas corpus proceeding in the Superior Court of Puerto Rico against Albrecht Curt Reuter, Gloria Reuter, Gloria E. Domenech, and Jorge Landrón.[1] In her petition plaintiff alleged that she was awarded the custody of her child, Patricia Gloria Landrón, who was four years old, in the final divorce decree of the Circuit Court for Dade County, Florida, and that subsequently, in September 1952, the father of the child snatched the child from her by means of force and violence, in Denver, Colorado, bringing the child to the home of Gloria E. Domenech in Mayagüez, Puerto Rico. The petitioner prays that the court again award her the custody of her daughter.

The defendants alleged, in brief, that the first divorce decree of the court of Florida was later amended by another, whereby said court deprived plaintiff of the custody of the child; that the girl lives in Mayagüez under the care and/in the residence of the defendant Gloria E. Domenech, who is the aunt of co-defendant Landrón; that the latter's mother also lives in that house; and that the welfare of the girl, for the reasons set forth in the answer, requires that she continue living in the custody of Gloria E. Domenech.

---

[1] The complaint was filed in the San Juan Part and later transferred to the Mayagüez Part of said court. On motion of the defendants and with the acquiescence of the plaintiff, Albrecht Curt Reuter and Gloria Reuter were eliminated as defendants, the case being continued in said Part against the defendants Gloria E. Domenech and Jorge Landrón.

After a trial at which both parties introduced testimony, the Mayagüez Part of the Superior Court rendered judgment denying the petition for habeas corpus and providing, among other things, that the minor, Patricia Gloria Landrón, remain in the custody of the co-defendant, Gloria E. Domenech. Said judgment is based on findings of fact and conclusions of law. The following are among the findings of fact:

"15.—On the date of the original decree, January 29, 1951, the petitioner lived in her house at Miami Springs, Florida, where she remained until August 2, 1951, when she abandoned her home and went to spend the rest of that day and night at the Miami Airways Hotel, located on 36th Street, Miami, Florida. The next day, August 3, she left for her parents' home in Denver, Colorado.

"16.—The child lived in the company of petitioner herein and of Ann Dowling, her sister, in Miami Springs, Florida, until August 1, 1951, on which date the aforesaid aunt removed the child from the house, taking her to the residence of the child's maternal grandparents in Denver, Colorado. Said removal was effected in violation of the express order included in the divorce decree and without asking permission of the court to that effect; and without petitioner herein, or any other person in her name, notifying, either prior or subsequent to the removal, the Circuit Court of Dade County of such removal or the reasons that she might have had to allow her sister to remove the child from the State of Florida.

"17.—As appears from the report of the master which served as a basis to modify the order concerning the custody of the minor child and as proved to the satisfaction of this court by the evidence introduced by the defendants, in the months following the divorce decree, when the plaintiff had already obtained the custody of her child (January 29, 1951), and especially in the months of June and July 1952, the plaintiff frequently indulged in prolonged drinking spells, on occasions having a complete collapse after several days of excessive use of alcoholic beverages. Prior to the divorce, as revealed by the report rendered by the master in the divorce case, as well as by the evidence which we had before us, it appears that plaintiff's life in these years was replete with drinking spells,

accompanied by conjugal infidelities, sexual excess, arrests, scandals, and other misbehavior.

"18.—The court believes that petitioner's conduct after the divorce decree, considered in the light of her antecedents and of the uncontroverted expert testimony introduced by the defendants, is one of a person addicted to the intemperate use of alcoholic beverages with the characteristic traits of a non-psychotic chronic alcoholic, that is, a case of chronic alcoholism of a psychopathic nature, whose conduct is undoubtedly prejudicial to the environment that should surround the physical, moral, and emotional development of a child of tender age such as the one involved in this litigation.

"19.—The uncontroverted expert testimony established the following as the personality traits of a non-psychotic chronic alcoholic, although not all of them are necessarily present in each case: such a person has anti-social tendencies; he is an habitual offender of the law; lacks perseverance and capacity to learn through life's experiences; has occupational instability; suffers from episodes of alcoholic coma and semi-coma; may stop drinking when in pursuit of objectives, but relapses into drinking once the immediate objective is attained; believes he does not need medical treatment; tends to project mechanisms of aggressiveness and finds pleasure in mortifying the persons about him; indulges in sexual excess and perversions; has a contradictory personality; is inconsistent in his moral attitudes, tending to lie with ease and frequently; has pyromaniac tendencies; suffers from a sense of frustration, insecurity and emotional instability, has an irascible temper and is given to fits of temper over trivial matters.

"20.—Chronic alcoholism without psychosis is a disease of a constitutional nature which is very difficult to cure since it is due to personality deficiencies, and the results of the treatment, which requires commitment to an asylum, can not be judged until several years after the person undergoes treatment. The petitioner has never submitted to medical treatment for the use of alcoholic beverages.

"21.—The evidence introduced concerning petitioner's present habits of moderation in the use of alcoholic beverages, consisting exclusively of the testimony of the plaintiff herself and of her present husband, does not convince the court that she may be entrusted with the care of her daughter, since the evidence establishes that if at times the petitioner has been able

to overcome overindulgence in alcohol when she has had immediate aims to attain, she has later relapsed into new drinking spells as soon as she attains her objective or loses interest therein.

"22.—Petitioner herein met her present husband, Elmer Pratt, on December 5, 1951, and they were married on February 17, 1952, establishing their residence from that date in Salt Lake City, Utah, where the minor, Patricia Gloria Landrón, went to live thereafter. Mr. Pratt is the father of three sons 26, 20 and 17 years old, respectively, none of whom lives with him at present, and in addition he has a son of his present marriage with petitioner, born on September 14, 1953.

"23.—On September 23, 1952, the Landrón child was with her mother and her stepfather in the city of Denver, Colorado, and from there she was removed to Puerto Rico by her father, defendant Jorge Landrón, who violently snatched her from her mother in a street of said city when the plaintiff was driving with the child in her car.

"24.—The child arrived in the Island on September 27, 1952, and since then has lived in the house of her great-aunt, Gloria E. Domenech, in the city of Mayagüez. And although defendant Landrón did not obtain a previous judicial order authorizing him to remove the child from Florida, he notified the judge of the Court of Dade County of his intention to bring her to Puerto Rico.

"25.—On the same day of her arrival in Puerto Rico, the minor, Patricia Gloria Landrón, was taken to Dr. Víctor Skerret, a pediatrician, for a physical examination. Said medical examination revealed that the child was suffering from malnutrition and was in a deplorable physical condition, with evidence of frequent colds. Said condition was chronic and not acute and the same existed for several months prior to the date of the examination. If that state of health had continued unattended, there would have been the danger that these chronic affections, together with the resulting low resistance, would have exposed this child to more serious diseases.

"26.—The minor was submitted to treatment and to other medical examinations on subsequent dates, the last of which took place on September 27, 1953. The latter examination revealed that the chronic affections had disappeared, as well as the symptoms of frequent colds which the child exhibited upon arriving here. During her stay in Puerto Rico the physi-

cal progress of the girl has been notable and the controlling elements accounting for this progress have been the care given to the child in the home of Mrs. Gloria Domenech, the climate of Puerto Rico, and the fact that the doctor's instructions have been followed. At present, the child has reached her normal weight and height, is in good health, and feels happy and satisfied in the environment in which she is living.

"29.—It has been proved that the defendant, Gloria Domenech, lives in Mayagüez with her husband, her sister, who is the mother of codefendant Jorge Landrón, and the minor, Patricia Gloria Landrón. Her home consists of a large house, with all the necessary comforts, and her economic position permits her to provide adequately for the care and education of the child. During the time the minor has been living in that home, she has been the subject of the affection, love and care which are necessary at her age and state of health. The codefendant, Gloria Domenech, has expressed her willingness to continue attending to the present and future needs of her niece, as well as to her education, and the exceptional qualities of Mrs. Domenech, both moral and intellectual, as well as her kind disposition towards the child, make her an unquestionably qualified person to be entrusted with the care of this child."

In its conclusions of law, the lower court held (1) that the divorce decree of January 29, 1951, rendered by the Circuit Court of Dade County, State of Florida, is entitled to full faith and credit and the same was considered res judicata between the parties in said action as to all the questions which the Florida court had entertained, considered and decided; (2) that the second decree of said court amending the original decree was valid and was entitled to complete recognition; and (3) that the courts of Puerto Rico have power to amend a decree as to the custody of a minor entered by the courts of another State, provided new circumstances have arisen justifying it.

■ In this appeal plaintiff-appellant assigns six errors. The first challenges the jurisdiction of the lower court to decide who should have the custody of the minor, Patricia Gloria Landrón. Her argument, as we understand it, is that the Superior Court of Puerto Rico lacked jurisdiction to decide

the custody of the minor because she was never domiciled in Puerto Rico; that, according to the first divorce decree entered by the Circuit Court for Dade County, Florida, the validity of which is not in issue, the custody of said minor is in her mother, whose domicile is in the state of Utah, and consequently, that this is also the domicile of the minor, wherefore the Superior Court had no other function in the habeas corpus proceeding than to order that the child be returned to the custody of the mother. She further urges that, assuming that the second decree of the Florida court amending the first and awarding the custody of the minor to the father was valid, which she denies, then the minor would be domiciled in the State of Florida, which is the domicile of her father. In support of her contention, the appellant cites the doctrine set forth in § 117, *Restatement, Conflict of Laws*, and the Oregon case, *Application of Lorenz*, 241 P. 2d 142 (1952), on reconsideration *Ex parte Lorenz*, 242 P. 2d 200 (1952),[2] which adopts said doctrine, in the following terms:

---

[2] In the *Lorenz* case, as summarized by appellant, a couple obtained a divorce in Indiana, where both reside, and the court awarded the custody to the mother. The mother permitted the children to spend some days with their father in Illinois. Taking advantage of the opportunity, the father kept them and eventually moved to Oregon with them. Thereafter the mother located them in Oregon and instituted a habeas corpus proceeding in a court of that State. The lower court assumed jurisdiction to determine to whom custody should be awarded and, after learning that the circumstances had changed since the Illinois court issued the decree, awarded the custody of the children to the father. The Supreme Court of Oregon held (1) that if it had jurisdiction therefor, the judge would have been justified in awarding the custody of the children to the father, and (2) that the lower court lacked jurisdiction to pass upon that point, and that, therefore, the children should be returned to the party to whom the custody was awarded in the divorce suit. The *ratio decidendi* of this case was that the question concerning the welfare of the minors and the consequent award of their custody could be decided only by a court of the minor's domicile. The ensuing corollary is that if a minor subject to custody under a valid decree of the courts of a State is illegally removed to another State by a person other than the custodian, the courts of the latter State declare themselves without jurisdiction to pass upon the question of the minor's welfare, and confine themselves to surrendering the minor to the person having the legal custody, thereby giving

"A state can exercise through its courts jurisdiction to determine the custody of children or to create the status of guardian of the person only if the domicile of the person placed under custody or guardianship is within the state."

This theory of exclusive jurisdiction, predicated on the minor's domicile, was created by Professor Beale.[3] Although it was accepted by the Restatement,[4] as set forth in the Lorenz case *supra*, it may be said that at present the doctrine and the case law refuse to accept the proposition that the minor's domicile is the only basis of jurisdiction over his person.[4a] The modern trend in the authorities recognizes that jurisdiction as to custody lies in (1) the courts of the state where the minor actually resides (physically present—present in—within—the state), and (2) the courts which have jurisdiction in personam over the parents

---

full faith and credit to the decree of the sister state. *Ex parte Mullins*, 174 P. 2d 790 (Wash. 1946); *State ex rel. Marthens* v. *Sup. Ct.*, 169 P. 2d 626 (Wash. 1946); *Jones* v. *McCloud*, 142 P. 2d 314 (Wash. 1943). As noted by the appellee, although some writers subscribe to this doctrine, which some courts adopt to discourage or punish illegal conduct in violation of a custody decree of another state (Ehrenzweig, *Interstate Recognition of Custody Decrees*, 51 Mich. L. Rev. 345, 363–365 and 4 A.L.R. 2d 7, 14 and 15) a majority of the courts reject that rule (sometimes called the "clean hands" rule) as a jurisdictional impediment. *Hilton* v. *Crawley*, 41 N. W. 2d 60, 70 (Iowa 1950); *Di Giorgio* v. *Di Giorgio*, 13 So. 2d 596 (Fla. 1943); *Wecks* v. *Cox*, 208 S. W. 2d 876 (Tex. 1948); *Sheehy* v. *Sheehy*, 186 Atl. 1, 3 (N. H. 1930); *White* v. *White*, 86 Atl. 353 (N. H. 1913); *Com.* v. *Davon*, 148 Atl. 524 (Pa. 1930), 107 A.L.R. 642–645 (1933) and 4 A.L.R. 2d 7, 22–24, 41–47, 54–62 (1949).

[3] See his treatise *The Conflict of Laws* (1935). This theory of Professor Beale is based on the fact that custody involves the question of status of the child, similar to the question of acknowledgment, legitimation, and adoption, and, consequently, that it is a question for the courts of the minor's domicile to determine. This rule, according to some authorities, is questionable, since the custody of a minor is incidental to the paterno-filial relations and of a transitory nature, as it may be changed overnight if the circumstances indicate that this is required for the minor's welfare. See Stumberg, *The Status of Children in the Conflict of Laws*, 8 Chicago Law Rev. 42, and 22 So. Cal. Law Rev. 293.

[4] *Restatement, Conflict of Laws*, § 117 (1934).

[4a] See Ehrenzweig, *Interstate Recognition of Custody Decrees*, 51 Mich. L. Rev. 345–47.

of the minor, if the latter is within the territory of the state, even if temporarily sojourning there.[5]

In this case we have seen that the lower court acquired jurisdiction in personam of the parents of the minor, Patricia Gloria Landrón, and of the codefendant, Gloria E. Domenech. In addition, the said minor has been residing for more than one year in the city of Mayagüez. Applying the best legal doctrine, we are of the opinion that the Superior Court of Puerto Rico correctly assumed jurisdiction to determine the minor's custody. We need not pass at this time

---

[5] Physically Present, present in, within—the state *Weiner* v. *Weiner*, 149 N.Y.S. 2d 362, 367 (N.Y. 1956); *Kallet* v. *Fitzpatrick*, 131 N.Y.S. 2d 9, 11 (N.Y. 1954); *Forbell* v. *Forbell*, 93 N.Y.S. 2d 1, 3 (N.Y. 1949); *Cadoo* v. *Cadoo*, 58 N.Y.S. 2d 634, 635 (N.Y. 1945); *People* v. *Van Dyk*, 33 N.Y.S. 2d 766, 770 (N.Y. 1942); *Finlay* v. *Finlay*, 148 N.E. 624, 625 (N.Y. 1925); *Smith* v. *Smith*, 45 A. 2d 879, 880 (Del. 1946); *Pelton* v. *Halverson*, 35 N.W. 2d 759, 762 (Iowa 1949); *In re Harris*, 89 A. 2d 615, 616 (Md. 1952); *Turner* v. *Turner*, 169 Atl. 873 (N.H. 1934); *Rogers* v. *Commonwealth*, 11 S. E. 2d 584, 586 (Va. 1940); *Ex parte Kosh*, 233 P. 2d 598, 600 (Cal. 1951); *Clemens* v. *Kinsley*, 239 P. 2d 266, 270 (Idaho 1951); *Starr* v. *Starr*, 263 P. 2d 675, 677 (Cal. 1954); *Wear* v. *Wear*, 285 Pac. 606, 615–16 (Kan. 1930); *In re Smith*, 67 A. 2d 478, 479 (N.J. 1949); *Avenier* v. *Avenier*, 216 S.W. 638, 642 (Tex. 1948); *Worden* v. *Worden*, 224 S.W. 2d 187, 190 (Tex. 1949); *State* v. *French*, 188 S.W. 2d 603, 604 (Tenn. 1945); *Ex parte White*, 16 So. 2d 500, 502 (Ala. 1944); *González-Fantony* v. *Fantony*, 105 A. 2d 909, 912 (N.J. 1954); *People* v. *Wingate*, 33 N.E. 2d 467, 471 (Ill. 1941); *Conley* v. *Conley*, 87 N.E. 2d 153, 154 (Mass. 1949); *Fantony* v. *Fantony*, 122 A. 2d 593, 598 (N. J. 1956); *McMillin* v. *McMillin*, 158 P. 2d 444, 446 (Colo. 1945); *Ritcher* v. *Harman*, 90 S.E. 2d 744, 748 (N. C. 1956); *Butler* v. *Butler*, 143 Atl. 471, 473 (N.H. 1928); *In re Pratt*, 18 N.W. 2d 147, 152 (Minn. 1945); *Kenner* v. *Kenner*, 201 S.W. 779, 782 (Tenn. 1918); *New York* v. *Halvey*, 330 U.S. 610, 617–18 (U.S. Supreme Ct. 1947); *Durfee* v. *Durfee*, 200 N.E. 395, 398 (Mass. 1936); *Wicks* v. *Cox*, 208 S.W. 2d 876, 878 (Tex. 1948); *Goldsmith* v. *Salkey*, 112 S.W. 2d 165, 167 (Tex. 1938); *State* v. *Ricketson*, 60 So.2d 88, 94 (La. 1952); *Eddy* v. *Stanfur*, 37 So. 2d 417, 418 (Fla. 1948); *Di Giorgio* v. *Di Giorgio*, 13 So. 2d 596, 597–98 (Fla. 1943); *Sheehy* v. *Sheehy et al.*, 186 Atl. 1, 3 (N.H. 1936); *Boone* v. *Boone*, 150 F. 2d 153, 154 (D.C. 1945); *Stansbury, Custody and Maintenance Across State Lines*, 10 Law and Contemp. Prob. 819 (1944); 4 A.L.R. 2d 10, 41–47 (1949); 9 A.L.R. 2d 436–458; 56 Colum. L. Rev. 630 (1956); 34 Geo. L. J. 105–108 (1946); 47 Mich. L. Rev. 705 (1949); 37 Va. L. Rev. 135 (1951); 80 U. Pa. L. Rev. 713 (1932); 22 U. Chi. L. Rev. 294 (1949); 22 So. Calif. L. Rev. 294 (1949); 53 Harv. L. Rev. 1025 (1940); 51 Mich. L. Rev. 345 (1953).

on the question of whether the courts of other States have concurrent jurisdiction with those of Puerto Rico to deter-mine the custody of the said minor.[6]

 In the second assignment the appellant contends that the Superior Court erred in holding that the second decree of the Florida court is valid. This alleged error is based on the fact (1) that the appellant was not duly notified of the proceedings before the Florida court to amend the first divorce decree, and (2) that the said court lacked jurisdiction over the minor for the reason that her domicile at that time was outside the State of Florida.[7]

Although the first point may seem debatable, we need not stop to consider it. The reason is obvious. If we were to hold that the second decree is void for lack of due notice to appellant, such a holding would not benefit her, since we have already held that the Superior Court had jurisdiction to pass on the welfare and, hence, on the custody of the child. This is so because the evidence presented by the defendants and believed by the trial court amply sustains the

---

[6] See *Sampsell* v. *Sup. Ct.*, 197 P. 2d 739 (Cal. 1948); Stansbury, *op. cit.*, pp. 830–32; 9 A.L.R. 2d 434, 442.

[7] As to retention of jurisdiction by the Florida court to amend its original custody decree even though the mother, in violation of that decree, took the minor outside the State of Florida, see Stansbury, *op. cit.* 819, 827 (1944); *Kern* v. *Lindsey*, 30 S.E. 2d 707, 709, (Va. 1944); *Van Gundy* v. *Van Gundy*, 56 N.W. 2d 43, 45 (Iowa 1952); *Reynolds* v. *Reynolds*, 128 P. 2d 172 and 134 P. 2d 251 (Cal. 1943); *Hersey* v. *Hersey*, 171 N.E. 815 (Mass. 1930); *Fagan* v. *Fagan*, 42 A. 2d 41 (Conn. 1945); *In re Blalock*, 64 S.E. 2d 848 (N.C. 1951); *Hatch* v. *Hatch*, 192 Atl. 241 (N. J. 1937); *White* v. *Shalit*, 1 A. 2d 765 (Me. 1938); *Ex parte State ex rel. MacLaughlin*, 30 So. 2d 507 (Ala. 1948); *Burckhardt* v. *Bachrach*, 225 S.W. 2d 1022 (Tex. 1950); *Cowles* v. *Cowles*, 120 Atl. 76 (N.H. 1923); *White* v. *White*, 55 Atl. 739 (N.J. 1903); Annotations in 70 A.L.R. 526–532, 171 A.L.R. 1405–1413, 4 A.L.R. 2d 7, 35–41, 93–96 (1949), 9 A.L.R. 2d 434, 453–458 (1950); 27 C.J.S., § 317 a, p. 1187. For the contrary view based on facts distinguishable from those in the present case, see *People ex rel. Wagner* v. *Torrence*, 27 P. 2d 1038 (Cal. 1933); Annotations in 4 A.L.R. 2d 32–35 and 85–93; *Dorman* v. *Friendly*, 1 So. 2d 734 (Fla. 1941); *State ex rel. Huhn* v. *Huhn*, 70 So. 2d 391 (La. 1954); *Sanders* v. *Sanders*, 14 S.W. 2d 458 (Mo. Appl. 1929 and cases cited in 4 A.L.R. 2d 733; *State ex rel. Rosco* v. *Rosco*, 190 So. 510 (Fla. 1939).

conclusion that there has been such a change of circumstances since the date of the first divorce decree as to warrant its modification with reference to the custody of the minor. That first decree, as respects the minor's custody, is not res judicata in Florida nor anywhere else, except as to the facts which the Florida court had before it and considered at the time it entered the decree. *Halvey* v. *Halvey*, 330 U.S. 610; Note, *Decrees and Judgments Awarding Custoy of Children of Florida*, 1 U. Fla. L. Rev. 360. The weight of authority is to this effect. See *Díaz* v. *District Court*, 55 P.R.R. 409; *Chardón* v. *District Court*, 45 P.R.R. 604; 27 C.J.S. §§ 317(a) and 317(b), pp. 1185, 1188; 70 A.L.R. 526; 4 A.L.R. 41–42.

Consequently, the evidence as to the facts and circumstances which occurred after the first decree and before entry of the second decree, assuming that the latter was void for lack of jurisdiction, was pertinent and the trial court could consider it in passing upon the welfare and custody of the minor. Only the defendant, Jorge Landrón, could complain that the second decree was not given full faith and credit by the Superior Court, which reweighed the evidence on which it was based; but the defendant elected to leave the Superior Court completely free to decide the controversy taking into consideration (1) the second decree, and (2) all the facts and circumstances occurring after the first decree. The error assigned was not therefore committed.

 The third assignment is to the effect that the lower court erred in admitting evidence as to the conduct of appellant, Patricia Pratt, prior to the first divorce decree, and in refusing to allow the plaintiff to examine the witnesses for the defense regarding the testimony given by them in the divorce suit in Florida. The fourth assignment, which is related to the previous error, is that the court erred in admitting the testimony of Dr. Julio Ortega, who "testified on the basis of a hypothetical question for-

mulated mainly on the basis of data concerning the past history of Mrs. Pratt prior to the divorce decree in Florida."

Briefly, appellant complains in these two errors that she was deprived of the defense of res judicata, alleging (1) that evidence was admitted as to facts bearing on her conduct prior to the divorce decree, and (2) that she was not permitted to cross-examine the witnesses for the defense, not for the purpose of impeachment, but for the purpose of establishing the defense of res judicata.

Appellant is not correct. Some evidence of facts prior to the divorce decree was admitted without objection on the part of plaintiff-appellant. After the latter raised the defense of res judicata, the lower court refused to admit testimony as to facts prior to the divorce decree, whenever they were mentioned in the allegations, in the three reports submitted by the master, or in the divorce and custody decree of the Florida court.[8]

The difficulty with appellant's contention is that the Superior Court did not base the judgment appealed from on the facts prior to the divorce decree, but on the contrary concluded, correctly in our opinion, that " . . . from the date of the original decree of January 29, 1951, new facts have arisen in connection with the custody and welfare of the child, Patricia Landrón, which fully justify the conclusion that plaintiff should not have the custody of the child at present. . ." As correctly contended by the appellees, the lower court based its determination on appellant's conduct following the divorce decree, on other facts which occurred after the divorce, and on the uncontroverted expert evidence offered by the defendants concerning appellant's chronic alcoholism of psycopathic character.

The trial court could not consider evidence as to facts which occurred prior to the divorce decree to modify, revise, or alter the original custody decree, but it could consider,

---

[8] The lower court did not have before it the transcript of the evidence adduced before the master.

as it did in this case, the evidence in connection with the controversy as to whether or not there had been a change in the circumstances, and it could likewise have admitted the evidence for the purpose of interpreting or shedding light on the subsequent facts adduced to establish appellant's present incapacity or lack of competency to have the care and custody of her minor daughter.[9] On the other hand, practically all of the evidence as to facts prior to the divorce already appeared in the documentary evidence offered by plaintiff-appellant herself.

The objection to Dr. Julio Ortega's testimony is based on the fact that the hypothetical question which he was asked included certain facts which occurred prior to the divorce decree. As already stated, many of those prior facts appeared in the documentary evidence offered by appellant. In any event, the testimony of this psychiatrist covers only the mental and physical condition of Mrs. Pratt *at present* and not at a time prior to the divorce decree in question. However, the doctor's expert opinion was required to be based on a complete account of appellant's conduct and all the symptoms of her mental infirmity. We have no doubt that the expert's diagnosis, based on facts prior and subsequent to the divorce decree, is a fact which the Florida Court did not have before it and did not consider. Therefore, the admission and consideration of Dr. Ortega's testimony was not error.

---

[9] See *Sheehy* v. *Sheehy, supra,* 27 C.J.S. 1196–1197; *Ganter* v. *Ganter,* 246 P. 2d 923, 927 (Cal. 1952); *Ross* v. *Ross,* 5 P. 2d 246, 249 (Colo. 1931); *Prouty* v. *Prouty,* 105 P. 2d 295 (Colo. 1940); *Griffin* v. *Griffin,* 187 Pac. 598 (Ore. 1920); *Crater* v. *Crater,* 67 Pac. 1049 (Cal.); *Foster* v. *Foster,* 68 P. 2d 719 (Cal. App.); *Young* v. *Young,* 256 P.2d 1005 (Cal. App.); *Alley* v. *Alley,* 247 Pac. 301 (Utah 1926); *Screw* v. *Screw,* 186 S.W. 2d 858 (Mo. 1945); *Davis* v. *Davis,* 192 S.W. 2d 41 (Mo. 1945) *White* v. *White,* 24 So. 2d 763 (Ala. 1945); *Padgett* v. *Padgett,* 27 So. 2d 205 (Ala. 1946); *Conley* v. *St. Jacques,* 110 S.W. 2d 1238 (Tex. Civ. App. 1937); *Pennington* v. *Pennington,* 195 S.W. 2d 677 (Tex. Civ. App. 1946.

■ The fifth assignment attacks the admission in evidence of Exhibit 8 of the defendants, consisting of a letter signed by Mr. Klaproth and found by defendant Landrón in appellant's home in Miami Springs. We do not stop to discuss this assignment. The error, if committed, would not warrant reversal of the judgment appealed from.

The sixth and last assignment alleges that it was error to decide that appellant Patricia Pratt should not have the custody of her daughter.

After a careful study of the entire record before us, we have reached the conclusion that the judgment appealed from is fully supported by the evidence offered at the trial and by the prevailing legal authorities bearing on the power of *parens patria* of the courts to regulate the custody of minor children, the chief concern of the courts being the welfare of the children, as warranted by all the surrounding circumstances of the case. *Rodríguez* v. *Pagán*, 67 P.R.R. 321; *Santos* v. *Berdecía*, 73 P.R.R. 713; *Muñoz* v. *Torres*, 75 P.R.R. 476.

For the reasons stated, the judgment will be affirmed.

Mr. Chief Justice Snyder, Mr. Justice Marrero and Mr. Justice Saldaña did not take part herein.