**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   NC-13-1615-KuPaJu |
| ANTON ANDREW RIVERA and DENISE ANN RIVERA, | Bk. No.   14-54193[*] |
| Debtors. | Adv. No.   14-05108 |
| ANTON ANDREW RIVERA; DENISE ANN RIVERA, | |
| Appellants, | |
| v. | **MEMORANDUM**[**] |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, Trustee of Certificate Holders of the WAMU Mortgage Pass Through Certificate Series 2005-AR6, | |
| Appellee. | |

Argued and Submitted on October 23, 2014
at San Francisco, California

Filed – November 24, 2014

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable M. Elaine Hammond, Bankruptcy Judge, Presiding

---

[*]The bankruptcy case and adversary proceeding were originally pending in the Oakland Division of the United States Bankruptcy Court for the Northern District of California as bankruptcy case no. 12-49703 and adversary proceeding no. 13-04008.  On October 15, 2014, the bankruptcy case and adversary proceeding were transferred to the San Jose Division and assigned new case numbers.

[**]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appearances: Ronald H. Freshman argued for appellants; Stefan Perovich of Keesal, Young & Logan argued for appellee.

Before: KURTZ, PAPPAS and JURY, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1] debtors Anton and Denise Rivera appeal from an order dismissing their second amended complaint without leave to amend and dismissing their adversary proceeding with prejudice.

We have conducted a de novo review of the Riveras' second amended complaint against defendant Deutsche Bank National Trust Company, Trustee of Certificate-Holders of the WAMU Mortgage Pass Through Certificate Series 2005-AR6 ("DBNTC"). Based on our de novo review, we conclude that some of the Riveras' claims for relief contain sufficient factual allegations to state a plausible entitlement to recovery under a cognizable legal theory. Some of their claims do not. Accordingly, we AFFIRM IN PART, REVERSE IN PART, and REMAND for further proceedings.

## FACTS

The Riveras' second amended complaint contained five causes of action, as follows: (1) to determine the extent and validity of DBNTC's lien; (2) for cancellation of written instruments; (3) for slander of title; (4) for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.;

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

and (5) for violation of the Federal Truth In Lending Act., 15 U.S.C. § 1641(g).[2]

According to the Riveras' second amended complaint, in 2004, they refinanced their real property located in Bethel Island, California, by obtaining a $440,000 loan from Washington Mutual Bank. In 2008, the Office of Thrift Supervision shut down Washington Mutual and appointed the FDIC as receiver for Washington Mutual. The FDIC as receiver for Washington Mutual then entered into a purchase and assumption agreement with JP Morgan Chase Bank pursuant to which Chase purchased some of Washington Mutual's assets and assumed some of its liabilities. In 2012, Chase (as Washington Mutual's successor in interest) executed a corporate assignment of deed of trust, thereby purporting to assign to DBNTC the deed of trust securing the Riveras' $440,000 loan.

Chase and DBNTC jointly filed a proof of claim in the Riveras' bankruptcy case asserting that DBNTC is a secured creditor and the holder of the Riveras' $440,000 promissory note and that Chase is DBNTC's servicing agent. The Riveras filed an objection to that proof of claim asserting that neither DBNTC nor Chase are entitled to enforce the note or to receive the payments owed under the note and hence lack standing to file the proof of claim.

---

[2]On DBNTC's motions, the bankruptcy court dismissed with leave to amend both the Riveras' original complaint and their first amended complaint. On appeal, the Riveras have not raised any issues challenging either of these two dismissals, so our review will be limited to the dismissal with prejudice of their second amended complaint.

3

The Riveras' second amended complaint refers to and attaches as an exhibit a copy of the deed of trust the Riveras signed in order to secure the $440,000 loan. In turn, the deed of trust refers to the promissory note the Riveras signed in exchange for the $440,000 loan. A copy of the note is not attached to the second amended complaint, but it is referenced in the complaint at paragraphs 52-53. Paragraphs 50-53 focus on the proof of claim DBNTC and Chase filed in the Riveras' bankruptcy case. The Riveras do not dispute that the copy of the note attached to the proof of claim is a copy of the note they signed, but they do challenge the authenticity, reliability and validity of the endorsement stamped on the last page of the note – an undated endorsement in blank purportedly signed by Leta Hutchinson as Assistant Vice President for Washington Mutual Bank.

The Riveras allege that the endorsement on the note is suspect for two reasons. First, they allege that, in an SEC filing disclosing information about the mortgage securitization trust for which DBNTC is trustee, the filing states that the mortgage notes pooled into the trust would not be endorsed and negotiated to the trust. And second, the Riveras allege that, after the FDIC's 2008 asset sale to Chase, Leta Hutchinson became an officer of Chase. The Riveras in essence infer from the above-referenced allegations that the Hutchinson endorsement is a sham: (1) that Hutchinson did not actually endorse the Riveras' note until 2012 – around the time Chase executed the assignment of the deed of trust; and (2) that, in 2012, Hutchinson no longer was an officer of the shut down Washington Mutual Bank and hence no longer had any authority to endorse the note on behalf of

4

Washington Mutual.

According to the Riveras, there were fatal problems not only with the endorsement of the note, but also with the transfer of Washington Mutual's rights in the loan and the security. The Riveras' second amended complaint pled alternate theories. In the first theory, the Riveras alleged that Chase's purported transfer of the security to the trust – by way of the 2012 corporate assignment of deed of trust – was void because Chase's purported 2012 assignment occurred seven years after the trust pool was supposed to close, as specified in the pooling and servicing agreement governing the securitization trust. Relying on Glaski v. Bank of Am., N.A., 218 Cal.App.4th 1079, 1083 (2013), the Riveras reason that Chase's attempted assignment was void because the assignment violated the trust's terms.

In the second theory, the Riveras allege that Chase could not convey to DBNTC any interest in the loan or the security because Chase never acquired from Washington Mutual any interest in the loan or security. The Riveras have offered two potential explanations for this theory. First, they posit that the FDIC's 2008 asset sale to Chase did not include Washington Mutual's rights with respect to the Rivera loan and security. And second, they posit that, because the note never was properly negotiated or otherwise properly transferred to Chase, neither Chase nor DBNTC ever acquired any valid right in the loan or the security.[3]

_____

[3]The Riveras admit in their opening appeal brief that their legal argument – the one regarding the assignment of the security being a nullity without a valid assignment of the underlying debt – is new. See Aplt. Opn. Br. at pp. 16-17. Ordinarily, we will
(continued...)

5

In short, the Riveras' second amended complaint disputes every link in the chain of title through which DBNTC claims to have acquired the right to enforce the Riveras' note and deed of trust. The Riveras contend that neither Washington Mutual nor the FDIC as the receiver for Washington Mutual ever conveyed any valid interest in these rights to Chase or DBNTC and that Chase never conveyed any valid interest in these rights to DBNTC.

The Riveras filed their chapter 13 bankruptcy case in December 2012. Within weeks, they commenced their adversary proceeding against DBNTC seeking declaratory relief and to determine the extent and validity of DBNTC's claimed lien against their property. The Riveras' complaint also sought, among other things, damages based upon DBNTC's alleged recordation of "false documents" and damages based on DBNTC's alleged violation of 15 U.S.C. § 1641(g) ("TILA Claim").

After the bankruptcy court twice dismissed the Riveras' complaint with leave to amend, and after the Riveras twice amended their complaint, the court heard DBNTC's motion to dismiss the Riveras' second amended complaint. The court ruled at the hearing that the second amended complaint did not state a

³(...continued)
not consider issues raised for the first time on appeal. <u>Scovis v. Henrichsen (In re Scovis)</u>, 249 F.3d 975, 984 (9th Cir. 2001). However, we have discretion to do so when: "the issue is purely one of law, does not affect or rely upon the factual record developed by the parties, and will not prejudice the party against whom it is raised." <u>Dream Palace v. Cnty. of Maricopa</u>, 384 F.3d 990, 1005 (9th Cir. 2003). Here, we will exercise our discretion to consider the Riveras' additional argument. Because this is an appeal from a Civil Rule 12(b)(6) dismissal, the parties have not yet developed any factual record.

6

valid claim for relief. In so ruling, the court acknowledged that the second amended complaint sought to challenge DBNTC's claim that it is the holder of the Riveras' note and was entitled to enforce the note. But the court held that California law did not require DBNTC to establish its status as holder of the note or as a person entitled to enforce the note in order to conduct a nonjudicial foreclosure of the property, citing Gomes v. Countrywide Home Loans, Inc., 192 Cal.App.4th 1149 (2011). The court further held that the Riveras lacked standing to challenge the validity of the assignment between Chase and DBNTC because the Riveras were not a party to that assignment, citing Dick v. Am. Home Mortg. Servicing, Inc., 2013 WL 5299180 (E.D. Cal. 2013). Finally, the court held that the Riveras had not alleged, as required, that any defects in the foreclosure process had prejudiced the Riveras by interfering with their ability to make payments owed on the loan, or that the original lender would not have initiated foreclosure proceedings, citing Fontenot v. Wells Fargo Bank, N.A., 198 Cal.App.4th 256 (2011).

Based on these holdings, the bankruptcy court determined that the Riveras' first through fourth claims for relief all should be dismissed because these claims all hinged on the Riveras' defective challenge to DBNTC's disputed status as the holder of the note or the person entitled to enforce the note. As for the Riveras' fifth claim – their TILA claim – it is not entirely clear why the court ruled that this claim should be dismissed. In spite of the Riveras' allegations that they never received notice of the purported change in owners of their home loan as required under 15 U.S.C. § 1641(g), the court appears to

7

have concluded that the Riveras had sufficient actual knowledge of the change in ownership, as reflected in the Riveras' court filings, so that they were not entitled to any recovery on account of 15 U.S.C. § 1641(g).

Finally, because the Riveras already had been given three prior opportunities to file their complaint against DBNTC and had not yet been able to state a viable claim for relief, the court ruled that the complaint would be dismissed without leave to amend and that the entire adversary proceeding would be dismissed with prejudice.

The bankruptcy court entered its final dismissal order on December 10, 2013, and the Riveras timely filed their notice of appeal on December 23, 2013.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (K) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err when it dismissed the claims for relief stated in the Riveras' second amended complaint?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's Civil Rule 12(b)(6) dismissal. Barnes v. Belice (In re Belice), 461 B.R. 564, 572 (9th Cir. BAP 2011).

### CIVIL RULE 12(b)(6) STANDARDS AND JUDICIAL NOTICE STANDARDS

When we review a matter de novo, we consider the matter anew as if the bankruptcy court had not previously ruled. Sachan v. Huh (In re Huh), 506 B.R. 257, 262 (9th Cir. BAP 2014) (en banc).

8

Therefore, we apply the same standards to Civil Rule 12(b)(6) dismissal motions that all other federal courts are required to apply. In re Belice, 461 B.R. at 572-73.

Under Civil Rule 12(b)(6), made applicable in adversary proceedings by Rule 7012, a complaint may be dismissed for "failure to state a claim upon which relief can be granted." To survive a Civil Rule 12(b)(6) dismissal motion, a complaint must present cognizable legal theories and sufficient factual allegations to support those theories. See Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121-22 (9th Cir. 2008). As the Supreme Court has explained:

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).

In reviewing the sufficiency of a complaint under Civil Rule 12(b)(6), we must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. See Newcal Indus., Inc. v. Ikon Office Solutions, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). However, we do not need to accept as true conclusory allegations or legal characterizations cast in the form of factual allegations. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

We may use judicially noticed facts to establish that a complaint does not state a claim for relief. Skilstaf, Inc. v.

9

CVS Caremark Corp., 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). We can take judicial notice of the existence, filing and content of documents in the Riveras' underlying bankruptcy case. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957–58 (9th Cir. 1989).

We also may consider the existence and content of documents attached to and referenced in the complaint as exhibits. Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001); Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Even when a document is not physically attached to the complaint, we may consider its existence and contents when its authenticity is not contested and when it necessarily is relied upon by the plaintiffs in their complaint. See United States v. Ritchie, 342 F.3d 903, 907–08 (9th Cir. 2003); Lee, 250 F.3d at 688.

Of course, just because a document states a "fact" does not necessarily mean that this fact is true. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). Whether the facts stated in a judicially noticed document are reasonably subject to dispute depends on the nature of the facts stated and the nature and purpose of the document as a whole. See Ferguson v. Wells Fargo Bank, N.A., 2013 WL 504709, at **2-3 (E.D. Cal. 2013); see also Lee, 250 F.3d at 690.

**DISCUSSION**

Citing Gomes and Dick, the bankruptcy court held that the Riveras had no right to dispute that DBNTC was the person entitled to enforce the note and no right to challenge the validity of the assignment of the deed of trust from Chase to DBNTC. We disagree with the bankruptcy court on both points.

10

Gomes was a state court lawsuit in which the plaintiff was alleging that the agent who had initiated nonjudicial foreclosure proceedings on behalf of the noteholder had not been authorized by the noteholder to initiate those proceedings. Gomes, 192 Cal.App.4th at 1152. In order to protect California's comprehensive scheme of laws governing nonjudicial foreclosures, Gomes held that there is no cognizable legal theory that enables a borrower to obtain a pre-foreclosure judicial determination as to whether the noteholder's nominee or agent actually had been authorized by the noteholder to initiate the foreclosure proceedings. Gomes, 192 Cal.App.4th at 1155-57.

Thus, the holding in Gomes is not quite as expansive as the bankruptcy court here treated it. This Panel recently examined Gomes and was careful to articulate Gomes's narrow holding:

> [A]s a California court recently held, Cal.Civ.Code § 2924 "does not provide for a judicial action" when the issue is not whether the wrong entity initiated foreclosure but whether the entity was merely authorized to do so by the owner of the note.

Cedano v. Aurora Loan Servs., LLC (In re Cedano), 470 B.R. 522, 531 (9th Cir. BAP 2012) (emphasis added) (citing Gomes, 192 Cal.App.4th at 1155).

Meanwhile, in Dick, after a nonjudicial foreclosure had been completed, the debtor-borrower commenced an adversary proceeding for wrongful foreclosure, alleging that an assignment of the deed of trust from the lender to the trustee of a securitization trust was void because the assignment violated the trust's terms, as specified in the pooling and servicing agreement governing the trust. See Dick, 2013 WL 5299180, at *1-2. The bankruptcy court here construed Dick as holding that a debtor-borrower lacks

11

standing to challenge the validity of an assignment of the deed of trust for purposes of asserting that the foreclosure proceedings were unauthorized. We acknowledge that the literal language of Dick arguably might support the bankruptcy court's construction. See Id. Nonetheless, when one reads Dick's literal language in context and looks at the cases that Dick cites, Dick only provides support for a more limited proposition: that the debtor-borrower cannot attack the assignment of a deed of trust to the trustee of a securitization trust based on the terms of a pooling and servicing agreement governing that trust because the debtor-borrower is not a party to the pooling and servicing agreement. Id. Furthermore, Dick acknowledged that there was a split of authority on this issue and ultimately declined to resolve the appeal based on this issue. Id. at *2-3. Instead, the court resolved the appeal based on the borrowers' failure to allege harm or prejudice. Id.

On a more fundamental level, Gomes and Dick each involved a direct attack on pending or completed nonjudicial foreclosure proceedings, and each can best be understood as part of a series of decisions protecting the comprehensive scheme of laws enacted by the California legislature to regulate nonjudicial foreclosures and aiming to keep such foreclosures relatively inexpensive, expeditious and out of court. See Debrunner v. Deutsche Bank Nat'l Trust Co., 204 Cal.App.4th 433, 442 (2012).

In contrast, the Riveras' second amended complaint arises in a markedly different procedural context. While some aspects of the second amended complaint might be construed as a direct attack on the foreclosure proceedings initiated against the

12

Riveras' property, other aspects addressed DBNTC's proof of claim and its assertions therein that it held a secured claim and was entitled to enforce the note. See, e.g., second amended complaint at ¶¶ 50-53.

It is clear from the bankruptcy court's comments at the hearing on the motion to dismiss the second amended complaint that the court understood the Riveras were alleging that DBNTC is not the holder of the note and is not a person entitled to enforce the note. Furthermore, we have no doubt that the bankruptcy court considered DBNTC's proof of claim to be at issue in the adversary proceeding, at least in terms of whether DBNTC was the person entitled to enforce the note and whether DBNTC had standing to file the proof of claim against the Riveras.[4]

[4]If we had any doubt that the bankruptcy court intended its rulings in the adversary proceeding to resolve these questions, that doubt would be dispelled by the court's comments at a subsequent hearing in the Riveras' bankruptcy case. At the March 20, 2014 hearing on the Riveras' objection to DBNTC's proof of claim, the court explicitly stated that its ruling disposing of the Riveras' adversary proceeding also disposed of the question regarding DBNTC's standing to file the proof of claim: "The issues as to authority to enforce the note were brought forth in the adversary proceeding which I have ruled on and that I understand is on appeal, so those are being litigated in that area and so [in these claim objection proceedings] we are looking strictly at the amount of the claim on the objection to claim." Audio File of hearing (March 20, 2014) (attached to Bk. Dkt. No. 12-49703 as Doc. No. 102). We may consider the court's comments at the March 20, 2014 hearing to the extent they constitute the court's interpretation of its own rulings. See generally Rosales v. Wallace (In re Wallace), 490 B.R. 898, 906 (9th Cir. BAP 2013) (holding that we give significant deference to the bankruptcy court's interpretation of its own order).

At oral argument in this appeal, both the Riveras and DBNTC argued that DBNTC's proof of claim was not at issue in the
(continued...)

13

This Panel previously has held that a debtor may object on standing grounds to a proof of claim based on a note secured by a deed of trust and that, unless the creditor establishes that it is a person entitled to enforce the note (or an agent of such a person), the claim objection should be sustained. See Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 919-21 (9th Cir. BAP 2011). As stated in In re Veal:

> When debtors such as the Veals challenge an alleged servicer's standing to file a proof of claim regarding a note governed by Article 3 of the UCC, that servicer must show it has an agency relationship with a "person entitled to enforce" the note that is the basis of the claim. If it does not, then the servicer has not shown that it has standing to file the proof of claim.
>
> * * *
>
> As stated before, AHMSI presented no evidence as to who possessed the original Note. It also presented no evidence showing indorsement of the note either in its favor or in favor of Wells Fargo, for whom AHMSI allegedly was servicing the Veal Loan. Without establishing these elements, AHMSI cannot establish that it is a "person entitled to enforce" the Note. The Veals would thus have a valid claim objection under § 502(b)(1).

Id. at 920, 21.

Here, it is unnecessary for us to decide for purposes of this appeal whether the Riveras' note is a negotiable instrument within the meaning of Cal. Com'l Code § 3104 and thus subject to California's Uniform Commercial Code provisions governing negotiable instruments, as specified in Cal. Com'l Code § 3102(a). Even if the Riveras' note does not qualify as a

---

[4] (...continued)
adversary proceeding, but the parties' arguments on this point are contrary to the bankruptcy court's explicitly stated intent regarding the scope of its rulings in the adversary proceeding.

negotiable instrument covered by the Uniform Commercial Code, for purposes of establishing DBNTC's standing to file its proof of claim and to overcome the Riveras' objection to that claim, DBNTC still would need to establish that the payment rights evidenced by the note had been assigned or negotiated to it. As a matter of general California contract law, an entity seeking to enforce contract rights as an alleged assignee of those rights ordinarily must show that the rights actually were assigned to it. See Heritage Pac. Fin., LLC v. Monroy, 215 Cal. App. 4th 972, 988-89 (2013); Fontenot, 198 Cal.App.4th at 270.[5] Without such proof, as In re Veal generally teaches, DBNTC's failure to establish its standing would be fatal to its proof of claim. See In re Veal, 450 B.R. at 919.

With respect to the Riveras' challenge to DBNTC's assertion of secured status, there is a similar dichotomy between the Riveras' rights for purposes of a nonjudicial foreclosure and their rights for purposes of DBNTC's assertion of secured status in its proof of claim. California law indicates that, for purposes of a non-judicial foreclosure, a party may foreclose based solely on its status as an assignee of the lender's rights under the deed of trust without regard to who holds the borrower's note. See Siliga v. Mortg. Electr. Registration Sys., Inc., 219 Cal.App.4th 75, 84 n.5 (2013); Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal.App.4th 497, 512-13 (2013); Debrunner,

[5]For an overview of the different ways under California law a lender might convey its payment rights to another outside the Uniform Commercial Code provisions governing negotiable instruments, see 4 Harry D. Miller & Marvin B. Starr, CAL. REAL EST. § 10:43 (3d ed. 2014).

15

204 Cal.App.4th at 440-42. But outside of the nonjudicial foreclosure context, an attempted assignment of a mortgage or trust deed without an assignment of the underlying debt is a nullity. Kelley v. Upshaw, 39 Cal. 2d 179, 192 (1952); Wolfe v. Leisure Time Sports, Inc. (In re Leisure Time Sports, Inc.), 194 B.R. 859, 861 (9th Cir.BAP 1996) (citing Union Supply Co. v. Morris, 220 Cal. 331, 338-39, 30 P.2d 394, 397 (1934)); see also Carpenter v. Longan, 83 U.S. 271, 275 (1872) ("An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.").

Even though Siliga, Jenkins and Debrunner may preclude the Riveras from attacking DBNTC's foreclosure proceedings by arguing that Chase's assignment of the deed of trust was a nullity in light of the absence of a valid transfer of the underlying debt, we know of no law precluding the Riveras from challenging DBNTC's assertion of secured status for purposes of the Riveras' bankruptcy case. Nor did the bankruptcy court cite to any such law.

We acknowledge that our analysis promotes the existence of two different sets of legal standards – one applicable in nonjudicial foreclosure proceedings and a markedly different one for use in ascertaining creditors' rights in bankruptcy cases. But we did not create these divergent standards. The California legislature and the California courts did. We are not the first to point out the divergence of these standards. See CAL. REAL EST., at § 10:41 (noting that the requirements under California law for an effective assignment of a real-estate-secured obligation may differ depending on whether or not the dispute

16

over the assignment arises in a challenge to nonjudicial foreclosure proceedings).

We must accept the truth of the Riveras' well-pled allegations indicating that the Hutchinson endorsement on the note was a sham and, more generally, that neither DBNTC nor Chase ever obtained any valid interest in the Riveras' note or the loan repayment rights evidenced by that note. We also must acknowledge that at least part of the Riveras' adversary proceeding was devoted to challenging DBNTC's standing to file its proof of claim and to challenging DBNTC's assertion of secured status for purposes of the Riveras' bankruptcy case. As a result of these allegations and acknowledgments, we cannot reconcile our legal analysis, set forth above, with the bankruptcy court's rulings on the Riveras' second amended complaint. The bankruptcy court did not distinguish between the Riveras' claims for relief that at least in part implicated the parties' respective rights in the Riveras' bankruptcy case from those claims for relief that only implicated the parties' respective rights in DBNTC's nonjudicial foreclosure proceedings.

Given these circumstances, we must separately examine each of the Riveras' claims for relief to account for this distinction and to determine if there is any alternate basis for concluding that, as a matter of law, a particular claim for relief lacks merit.

**1.    First Claim for Relief – to Determine the Extent and Validity of Lien**

Except when the debtor seeks to avoid a lien or other interest in exempt property under § 522(f), all other bankruptcy

17

court actions challenging a creditor's secured status must be brought as an adversary proceeding to determine the validity, priority or extent of the creditor's lien. See Rule 7001(2); Bear v. Coben (In re Golden Plan of Cal., Inc.), 829 F.2d 705, 711–12 (9th Cir. 1986).

Here, the underlying legal basis for the Riveras' first claim for relief is state law. They principally allege that Chase's assignment of the deed of trust was void because it violated the terms of the pooling and servicing agreement governing the securitization trust to which Chase purported to assign the Riveras' deed of trust. The Riveras cited Glaski, 218 Cal.App.4th at 1094-97, to support their argument. Glaski held that the assignment of a deed of trust to a securitization trust is void under New York trust law if the assignment violated the trust's governing pooling and servicing agreement. Id. The bankruptcy court here rejected Glaski and instead adopted as persuasive the reasoning of Sandri v. Capital One, N.A. (In re Sandri), 501 B.R. 369 (Bankr. N.D. Cal. 2013), which held that such a violation of the pooling and servicing agreement only would render the deed of trust assignment voidable rather than void and that the borrower lacked standing to raise issues regarding violation of the pooling and servicing agreement because it was not a party to that agreement. Id. at 375-76. In re Sandri followed the weight of authority among the California appellate courts on this issue. See, e.g., Jenkins, 216 Cal.App.4th at 515. Moreover, like the bankruptcy court, we find Sandri's analysis persuasive.

When, as here, we must apply state law to resolve an issue,

18

and the state's highest court has not yet addressed the issue, our job as a federal court applying state law is to predict how the state's highest court would resolve the issue. Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1203 (9th Cir. 2002). Unless we are convinced that the California Supreme Court would decide the issue differently, we are obliged to follow the decisions of California's intermediate appellate courts. Vestar Dev. II, LLC v. Gen. Dynamics Corp., 249 F.3d 958, 960 (9th Cir. 2001); Spear v. Wells Fargo Bank, N.A. (In re Bartoni-Corsi Produce, Inc.), 130 F.3d 857, 861 (9th Cir. 1997).

Here, we note that the California Supreme Court recently granted review from an intermediate appellate court decision following Jenkins and rejecting Glaski. Yvanova v. New Century Mortg. Corp., 226 Cal.App.4th 495 (2014), review granted & opinion de-published, 331 P.3d 1275 (Cal. Aug 27, 2014). Thus, we eventually will learn how the California Supreme Court views this issue. Even so, we are tasked with deciding the case before us, and Ninth Circuit precedent suggests that we should decide the case now, based on our prediction, rather than wait for the California Supreme Court to rule. See Hemmings, 285 F.3d at 1203; Lewis v. Telephone Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996). Because we have no convincing reason to doubt that the California Supreme Court will follow the weight of authority among California's intermediate appellate courts, we will follow them as well and hold that the Riveras lack standing to challenge the assignment of their deed of trust based on an alleged violation of a pooling and servicing agreement to which they were not a party.

19

Even though the Riveras' first claim for relief principally relies on their allegations regarding the assignment's violation of the pooling and servicing agreement, their first claim for relief also explicitly incorporates their allegations challenging DBNTC's proof of claim and disputing the validity of the Hutchinson endorsement. Those allegations, when combined with what is set forth in the first claim for relief, are sufficient on their face to state a claim that DBNTC does not hold a valid lien against the Riveras' property because the underlying debt never was validly transferred to DBNTC. See In re Leisure Time Sports, Inc., 194 B.R. at 861 (citing Kelly v. Upshaw, 39 Cal.2d 179 (1952) and stating that "a purported assignment of a mortgage without an assignment of the debt which it secured was a legal nullity.").

While the Riveras cannot pursue their first claim for relief for purposes of directly challenging DBNTC's pending nonjudicial foreclosure proceedings, Debrunner, 204 Cal.App.4th at 440-42, the first claim for relief states a cognizable legal theory to the extent it is aimed at determining DBNTC's rights, if any, as a creditor who has filed a proof of secured claim in the Riveras' bankruptcy case.

Consequently, the bankruptcy court erred when it dismissed the Riveras' first claim for relief.

**2.    Second Claim for Relief – For Cancellation of Written Instruments**

The Riveras' second claim for relief seeks cancellation of Chase's assignment of the deed of trust, as well as the notice of default and the notice of sale that Chase caused to be recorded

20

on DBNTC's behalf.

As provided in Cal. Civ. Code § 3412:

A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled.

Id.; see also In re Cedano, 470 B.R. at 533. To plead a viable claim for relief, the Riveras needed to allege that they would be injured or prejudiced unless these instruments were cancelled. See Dick, 2013 WL 5299180, at *4.

The Riveras' second claim for relief is based on the same two legal arguments regarding the violation of the pooling and servicing agreement and the absence of a valid transfer of the underlying debt to DBNTC. As set forth above, the Riveras lack standing to assert violations of the pooling and servicing agreement in support of their claims for relief. See Jenkins, 216 Cal.App.4th at 515; see also In re Sandri, 501 B.R. at 375-76.

As for their remaining argument – that the assignment was a nullity because DBNTC did not receive a valid transfer of the underlying debt – the only alleged harm the second amended complaint specifically references (arising from the trust deed assignment, the notice of default and the notice of sale) relates to DBNTC's pending nonjudicial foreclosure proceedings. As we already have explained, the alleged absence of noteholder status is not an issue that a borrower can raise to challenge nonjudicial foreclosure proceedings. Debrunner, 204 Cal.App.4th at 440-42.

Even if the California courts generally permitted borrowers

21

to raise noteholder status issues to challenge nonjudicial foreclosure proceedings, any harm arising from DBNTC's foreclosure proceeding is not logically attributable to the so-called false written instruments; rather, it is attributable to the Riveras' default on their loan obligations. As the bankruptcy court pointed out, the Riveras admitted in other court filings that they had fallen behind on their loan payments. The Riveras have not challenged this point on appeal. In light of this admitted default, we cannot reasonably infer from the Riveras' allegations that they have been harmed by the allegedly false written instruments. See Iqbal, 556 U.S. at 678.

Our reasoning is consistent with a number of California appellate court decisions holding that, when a borrower is in default and seeks to challenge the foreclosure process by attacking a prior assignment of the deed of trust, the borrower must allege particularized prejudice arising from the assignment – either that the allegedly invalid assignment interfered with his or her ability to make loan payments or that the original lender would not have initiated foreclosure proceedings. See, e.g., Siliga, 219 Cal.App.4th at 85; Herrera v. Fed. Nat'l Mortg. Ass'n, 205 Cal.App.4th 1495, 1507-08 (2012); Fontenot, 198 Cal.App.4th at 272.

Because the Riveras second amended complaint did not allege any legally congnizable harm arising form the subject written instruments, the bankruptcy court did not err when it dismissed the Riveras' cancellation of written instruments claim.

**3.    Third Claim for Relief – For Slander of Title**

"Slander of title is a 'tortious injury to property

22

resulting from unprivileged, false, malicious publication of disparaging statements regarding the title to property owned by plaintiff, to plaintiff's damage.'" In re Cedano, 470 B.R. at 533 (quoting Southcott v. Pioneer Title Co., 203 Cal.App.2d 673, 676 (1962)). Recording a facially valid written instrument with no underlying merit can give rise to a slander of title claim for relief. In re Cedano, 470 B.R. at 533 . The elements for a slander of title claim are: "(1) publication, (2) absence of justification, (3) falsity, and (4) direct pecuniary loss." Id.

The Riveras' slander of title claim is based on the same legal theories as their cancellation of written instruments claim. It also suffers from the same fatal deficiencies. Thus, the bankruptcy court did not err when it dismissed the Riveras' slander of title claim.

**4.    Fourth Claim for Relief – for Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200**

The Riveras' fourth claim for relief alleges that DBNTC engaged in unfair, unlawful and fraudulent business practices within the meaning of Cal. Bus. & Prof. Code § 17200, et seq., which is known as California's Unfair Competition Law ("UCL"). To establish their right to pursue their UCL claim, the Riveras needed to allege, among other things, that they lost money or property "as a result of" the alleged unfair business practice. Kwikset Corp. v. Super. Ct., 51 Cal.4th 310, 321-22 (2011).

In their UCL claim for relief, the Riveras allege against DBNTC a number of different wrongful practices arising from the same activities complained of throughout their second amended complaint. Even if we were to assume that these allegedly

23

wrongful practices are actionable under the UCL, the Riveras have not alleged facts from which we reasonably can infer that they personally have been injured by those practices. See Iqbal, 556 U.S. at 678.

We already have explained in detail above the fatal deficiencies in the Riveras' second amended complaint concerning the issues of causation and injury. More specifically, we explained that any loss they might have suffered as a result of DBNTC's foreclosure proceedings is logically and legally the result of the Riveras' default on their loan obligations rather than the result of Chase's and DBNTC's alleged conduct. Accordingly, the bankruptcy court did not err when it dismissed the Riveras' slander of title claim.

**5.    Fifth Claim for Relief – for violation of the Federal Truth In Lending Act, 15 U.S.C. § 1641(g)**

The Riveras' TILA Claim alleged, quite simply, that they did not receive from DBNTC, at the time of Chase's assignment of the deed of trust to DBNTC, the notice of change of ownership required by 15 U.S.C. § 1641(g)(1). That section provides:

> In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including--
>
> (A) the identity, address, telephone number of the new creditor;
>
> (B) the date of transfer;
>
> (C) how to reach an agent or party having authority to act on behalf of the new creditor;
>
> (D) the location of the place where transfer of ownership of the debt is recorded; and

24

(E) any other relevant information regarding the new creditor.

The bankruptcy court did not explain why it considered this claim as lacking in merit. It refers to the fact that the Riveras had actual knowledge of the change in ownership within months of the recordation of the trust deed assignment. But the bankruptcy court did not explain how or why this actual knowledge would excuse noncompliance with the requirements of the statute.

Generally, the consumer protections contained in the statute are liberally interpreted, and creditors must strictly comply with TILA's requirements. See McDonald v. Checks–N–Advance, Inc. (In re Ferrell), 539 F.3d 1186, 1189 (9th Cir. 2008). On its face, 15 U.S.C. § 1640(a)(2)(A)(iv) imposes upon the assignee of a deed of trust who violates 15 U.S.C. § 1641(g)(1) statutory damages of "not less than $400 or greater than $4,000."

While the Riveras' TILA claim did not state a plausible claim for actual damages, it did state a plausible claim for statutory damages. Consequently, the bankruptcy court erred when it dismissed the Riveras' TILA claim.

**6.   Dismissal without leave to amend**

Because we are affirming the bankruptcy court's dismissal of at least some of the Riveras' claims for relief, it is appropriate for us to acknowledge the issue of the bankruptcy court's denial of leave to amend. In appeals from Civil Rule 12(b)(6) dismissals, we typically review the court's decision to deny leave to amend. See, e.g., Tracht Gut, LLC v. Cnty. of L.A. Treasurer & Tax Collector (In re Tracht Gut, LLC), 503 B.R. 804, 814-15 (9th Cir. BAP 2014); Nordeen v. Bank of

25

Am., N.A. (In re Nordeen), 495 B.R. 468, 489-90 (9th Cir. BAP 2013). Here, however, the Riveras did not argue in either the bankruptcy court or in their opening appeal brief that the court should have granted them leave to amend. Having not raised the issue in either place, we may consider it forfeited. See Golden v. Chicago Title Ins. Co. (In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002).

Even if we were to consider the issue, we note that the bankruptcy court gave the Riveras two chances to amend their complaint to state viable claims for relief, examined the claims they presented on three occasions and found them legally deficient each time. Moreover, the Riveras have not provided us with all of the record materials that would have permitted us a full view of the analyses and explanations the bankruptcy court offered them when it reviewed the Riveras' original complaint and their first amended complaint. Under these circumstances, we will not second-guess the bankruptcy court's decision to deny leave to amend. See generally In re Nordeen, 495 B.R. at 489-90 (examining multiple opportunities given to the plaintiffs to amend their complaint and the bankruptcy court's efforts to explain to them the deficiencies in their claims, and ultimately determining that the court did not abuse its discretion in denying the plaintiffs leave to amend their second amended complaint).

## CONCLUSION

In ruling on DBNTC's motion to dismiss the Riveras' second amended complaint, the bankruptcy court erred when it dismissed the Riveras' first and fifth claims for relief, but the court did

not err when it dismissed the Riveras' second, third and fourth claims for relief. Accordingly, we AFFIRM the dismissal of the second, third and fourth claims for relief, we REVERSE the dismissal of the first and fifth claims for relief, and we REMAND for further proceedings.